The Judges delivered their opinions. †
Judge Green.
Although the first question in order in this cause, seems to be, whether the evidence given by George PVoodson *570 Payne, the trustee and one of the defendants, was compe|ent an(j admissible or not; yet as the fate of that question may, in some measure, depend upon the other matter of the rec.ord, it is proper to enquire, first, how the case would stand, exclusive of his testimony.
James Taylor, the testator of the appellant, in 1798, instituted a suit in Chancery against John S. Moore and Jinn Catharine his wife, and others, of whom George Woodson Payne was one; and on the 27th of February, 1809, recovered several decrees against, several of the defendants, and among others, J. S. Moore. Pending this suit, on the 10th of April, 1805, John S. Moore conveyed to George W. Payne, 17 slaves, a coachee and harness, 2 horses, 2 mules, 4 milch cows, 2 calves, and all his household and kitchen furniture. The deed purports to be made for the consideration of £ 1,000 paid by Payne to Moore, in trust that, “ whereas Jinn Catharine Moure, the wife of the said J. S. Moore, is entitled to dower in sundry tracts of land, which the said J. S. Moore is desirous of selling and disposing of. This writing, therefore, witnesseth, that in consideration of a relinquishment of dower in three separate pieces, parcels or tracts of land, two of which tracts of land are lying in the County of Hanover, and in the aggregate, contain 1,236 acres, and the other, in the County of King William, containing 500 acres;” the said Payne was to stand seised and possessed of the property to the use of the said Jinn C. Moore for life, and to the use and benefit of such "child or children (in equal shares) as the said J. S. Moore may now have or shall hereafter have begotten on the body of the said Jinn Catharine Moore. Upon the decree aforesaid against Moore, an execution of fi. fa. issued on 16th day of November, 1809, upon which the officer, Benjamin Sheppard, returned that he had executed it on 4 of the negroes mentioned in the said deed, and the sale had been forbidden by G. W. Payne, trustee for Mrs. Moore, whereupon he had surrendered the property. In October, 18.10, *571 Taylor exhibited his bill against Payne, the trustee (Moore being dead insolvent, and no administration on his estate) and Ur: eesfui qae trusts, staling in substance, the, tacts ature;,aid, and charging that the said deed was made without consideration, long after the marriage of Moore and vrif'*, sod for the purpose of coveting the property from the creditors of Moore, who was then greatly indebted; and prays, that the deed may he declared fraudulent and void as to the plaintiff, and for general relief; but calls,, In terms, for no discovery of the consideration of the deed.
The answer of Mrs. Moore states, that about the time the deed in question was executed, her husband had deter mined to dispose of his lands, which were very valuable They consisted of three tracts, one in King William, and two in Hanover; and that she was advised by her friends, that it was a duty she owed to herself, and her children, (ten in number, at her husband’s death, and one born afterwards,) to insist that her husband (to whom she brought ten valuable slaves in marriage,) should make some settlement on her, which might serve for her subsistence, and that of her numerous children, and eventually as a provision for the latter; that, her husband admitting this advice to he corred, it was distinctly agreed between her husband and herself, that ho should make such a settlement as that contained in the deed, ic in consideration of her relinquishing her right of dower as aforesaid;” that she does not remember whether the said deeds (of relinquishment, I suppose,) preceded or followed the deed to Payne; jet, she positively avow. that, the said relinquishments, whatever were their dates, were, subsequent to, and induced by,, solemn promises on the part of her husband, to make a settlement as aforesaid; and positively denies fraud. She does not believe (never having heard so,) that the plaintiff’s execution had ever been levied upon any of the trust property; states, that she had consented to tho sale of Alexander. une of the trust slaves, for the payment of a debt oí Jf. »Sl Moore, to prevent an execution from being levied on Moores she giving up her right in the slave so sold.
*572 The answer of G. TV. Payne states, that when J. S. Moore was selling off his lands in Hanover, to remove to Richmond, where he was about to engage in the brick-ma-kmg business, in which he had no experience, he urged upon Mr. and Mrs. Moore, that he was in duty bound to his family, to make a settlement on his wife and children, in consideration of her relinquishing her right of dower in said land, and urged Mrs. Moore not to relinquish her right of dower, until such relinquishment (I suppose, settlement,) was made: that Moore at first objected; but, finally, solemnly agreed, in his presence, with Mrs. Moore, that if she would relinquish her claim, he would make the settlement: that, in pursuance of this promise, the said Moore executed, on the 10th-of April, 1805, the deed in question to him: that he believes that the deed to Mosby by Moore and wife, was executed before making the deed in question; but, he is well convinced, that Mrs. Moore relinquished her right of dower, as aforesaid, in consequence of the said promise and agreement: that, after the deed was executed, he considered himself as having complete control of the property conveyed, hired out some of the slaves, and others he left with the family, for the support of Mrs. Moore, and her children. He does not recollect that any of the negroes were taken under the plaintiff’s execution, and does not recollect or believe, that he ever forbade the sale; and insists that the transaction was bona fide.
The other answers are wholly immaterial.' The deed from Moore and wife to Mosby for one tract of the Hanover land, is dated October 16, 1799, and Mrs. Moore was privily examined in the District Court, on the 11th day of April, 1800. The deed to Mosby, for the other tract of land in Hanover, was executed by Moore and wife on the 15th of July, 1800, and Mrs. Moore was privily examined in the District Court, in September following. The consideration of the first deed was £ 1,400; of the second, £ 2,000. No conveyance is exhibited for the King Wil *573 liam land; nor does it appear ever to have been sold by Moore; and, for any thing that appears, she now enjoys her dower in that tract of land.
Benjamin Sheppard testifies, that in 1804, N B. and ,/, Sheppard purchased a house and lot of J. S. Moore: that, a few days after, and before a deed was made, Moore applied to him for the payment of some money on account of the purchase: that he refused to pay him any, until a complete deed, with Mrs. Moore’s relinquishment of dower, was made, and until he could make some enquiry as to the title of the house and lot; he having heard that all Moore’s property was conveyed fo Payne, for the benefit of 'Mrs. Moore and her children. Moore affirmed that there ivas no such conveyance, and never had been. A few days after, he waited on Mrs. Moore, to execute the deed for the house and lot, when she said she had been very much hurt at his observations, made as before stated, to Mr. Moore: that Mr. Moore’s properly was as free from incumbrance as any man’s on earth; and that Mr. Payne had not, and never had, any incumbrance on his property'. The witness further states, that in January, 1807, he levied an execution against J. S. Moore, on old Pom, one of the negroes mentioned in the deed of trust: that Payne consented that the negro should be sold to satisfy the execution, and s.aid that this negro, with many others, was conveyed to him by J. S. Moore, in trust for Mrs. Moore, and her children; but, that it was not his intention, nor the. intention of Mrs. Moore, to prevent the property from being sold for the payment of Mr. Moore’s just debts; and observed, that the said Moore, was in the habit of making a great many injudicious bargains, and that it was the intention of J. S. Móore and Mrs. Moore, and of the said Payne, so to secure the property as to prevent its being sold to satisfy any debts of that description, lie further said, that, in addition to the consideration before mentioned, the deed was made in consideration of Mrs. Moore’s having relinquished her right of dower to *574 a tract of land sold by Moore and wife to S. Mosby, several years before; and, in answer to an interrogatory by the' witness, he said that the execution of the deed of trust had been delayed for no particular cause, but he considered it was entitled to the same force, as if it had been executed on the day the relinquishment of dower was made, as he considered it as a continuation of the contract. This witness, .together with N. and J. Sheppard, had, when he was examined, a cause depending in Chancery against J. S. Moore’s representatives and Bernard Moore; the object of which does not distinctly appear, but was probably, amongst other things, to set aside this deed.
George Underwood, testifies, that some time after J, S. Moore removed from Richmond, he heard G. W. Payne, at Archibald Dandridge’s house, in presence of said Dandridge and others, say, that J. S. Moore had conveyed the whole of his property to him, in trust, in order to prevent its being taken to pay his debts; but afterwards observed, if care and economy were observed, the profits of the estate would be sufficient to pay its debts.
Samuel Mosby testifies to his purchase of the land in Hanover for £ 3,400; that Moore purchased another tract of land for £ 1,000, of which =6 500 remained due; that ho thinks John S, Moore, when he sold the land to the witness, had other property sufficient to pay his debts, but not sufficient at the time he executed the deed to Payne; he knows not the names, age, or value of the negroes conveyed, either when conveyed, or when the deposition was taken; but supposes, (having seen the deed) that the trust property does not exceed in value the dower interest. The residue of this witness’s testimony is either irrelevant, or hearsay, without stating from whom.
•Archibald B. Dandridge testifies, that to the best of his recollection, he did not hear G. W. Payne make the declaration to Underwood, stated in his deposition: that he has often heard G. W. Payne say, that the deed was made in consequence of Mrs. Moore relinquishing her *575 right of dower in certain property, and that he had always advised Mrs. Moore not to relinquish her right of dower, unless J. S. Moore would make over property in lieu of it.
Mary Ellis deposes, that she has heard J". 8. Moore say, that he had given his wife several negroes, in lien of her dower in the tract of land sold to Mushy.
Robert H. Dandridge testifies, that he heard J. 8. Moore say, that he did not convoy his property to prevent the payment of his debts, but he had conveyed it in lieu oí his wife’s dower.
To the understanding of the effect of this evidence, it is proper to enquire what were the issues made up between the parties, and upon whom the onus proban di lay, in respect to such issues.
1. The plaintiff affirms, that the deed in question was actually fraudulent and voluntary, which the defendants deny'.
3. The defendants alledge, that the deed was made, not upon the considerations specified in the deed, but upon other considerations of the same nature (but the answers differ as to the particulars and extent of the alledged considerations) which the plaintiff puts in issue by his replications.
3. The plaintiff alledges that Bay ne, by his interference, prevented a part of the trust property from being sold under the plaintiff’s execution, which the defendants deny in such a way (though not positively) as to put the fact in issue.
As to the first and third issues, the onus probandi lay upon the plaintiff; the general rule being, that he who holds the affirmation of the issue is bound to prove the affirmation on which he relies. Phill Evid. 156.
As to the second issue, the onus lay on the defendants for the same reason. Although it be true, that when the plaintiff seeks a discovery from the defendant as to any matter of fact, he thereby, as to the matter so sought to be *576 discovered, makés the defendant a witness, and therefore the answer is evidence for the defendant, so far as it is responsive to such bill; yet, as to a matter in respect of which ^le bill seeks no discovery, if the answer alledges any thing affirmatively, it is not evidence for the defendant, but is to be proved by him. In this case, the bill seeks no discovery, whether any other consideration was given by Mrs. Moore, than that specified in the deed.
Although the deed itself in this case, in the absence of all other evidence, would be evidence that the consideration, therein specified, was the true consideration, upon which the deed was made; yet the plaintiff, having proved that the consideration specified in the deed, and purporting to be future, was impossible, because the dower in two of the tracts of land mentioned in the deed, had been relinquished near five years before the deed was executed, and it not appearing that the dower in the third tract of land' was ever relinquished, has thereby shewn prima facie that the deed was voluntary, and therefore fraudulent as to the plaintiff, who was a creditor of Moore at the time of the execution of the deed, and then prosecutinga suit for the recovery of his debt. Against this proof and its consequence, the defendants have nothing to oppose, but the declarations of J. S. Moore and Payne, made after the execution of the deed, (and therefore not competent to be given in evidence, in support of the validity of the deed,) that the deed was made in consideration of a contract on the part of Moore, made five years before the execution of the deed, to compensate his wife for her relinquishment of her dower in the lands sold to Mosiy; and the naked fact, that Mrs. Moore had actually released her dower; from which it is attempted to be inferred, that such an agreement for compensation had been made. To tolerate such an inference would be practically to authorise every man, whose wife had voluntarily and gratuitously relinquished her dower in his lands, at any distance of time, and when a change of her circumstances made it expedient to provide *577 for his wife and children, and virtually for himself, to the prejudice of his creditors. Such an inference would be contrary to the practice of the country; for, the relinquish-meat of dower hy the wives of persons in tolerably good circumstances, is usually made without any contract for compensation. And such an inference is, in this case, conclusively repelled, hy circumstances which so strongly negative the allegation of such a contract, that even if the answers were, in this respect, responsive to the bill, they would be over-ruled hy the evidence and circumstances of the cause. 9 Cranch, 160.
Even if it were admitted, (which is doubtful at least,) that it was competent to the defendants to insist upon a consideration, different from, though of the same nature as that stated in the deed, Clarkson v. Hanway, 2 P. Wms. 203; 2 Sch. & Lefr. 501; yet the discrepancy between that stated in the deed, and those relied upon in the answers, affords, in connexion with other circumstances, strong evidence of fraud.
Other circumstances which negative the pretensions of the defendants, and from which fraud may justly be inferred, are, that the deed was not executed until five years after the pretended contract: that the contract was a profound secret to all the world, except Mr. and Mrs. Moore and the trustee Payne, from the time it is alledged to have been made, until a short time before the deed was executed: that Mrs. Moore herself affirmed that her husband’s property was free and unincumbered, shortly before the execution of the deed, when, if her present claims were well founded, she was entitled to a provision out of his estate, equivalent to the whole which remained: that the deed was made, pending the plaintiff’s suit: that it embraced all Moore’s personal property, as may be justly inferred from the terms of the deed itself, and the evidence of Mosby: that it was made in contemplation of Moore’s insolvency: that both the trustee and Mrs. Moore had consented to the sale of a part of the property, under execution for the *578 payment of Moore’s debts, disregarding the interests of qle children: that the trustee had declared, after the male ing of tlie deed, that it was made to cover Moore’s pro-party» from the claims of his creditors, and made other statements inconsistent with the defence now set up: that there is manifestly a great disparity between the value, of the dower relinquished, and the compensation pretended to be given therefor. As to all these badges of fraud, see Rob. on Fraud. Con. 34, n. 67, 528, 418, 559, 189, 577, 16, 573, 27, n. 21; 9 Rep. 11; 10 Ves. 151; Amb. 596; 8 Co. 80; 1 Vern. 459; 13 Vin. Fraud, C. pl. 2, 3, N. a. pl. 2; Taylor v. Jones, 2 Atk. 602.
These circumstances are so ambiguous, and. so inconsistent with the ordinary course of bona fide transactions, as to be conclusive evidence of the fraudulent intent, with which the deed was made; and to justify a Court of Equity in treating it as void against the creditor in this case, with» out the intervention of a jury.
All these facts have been properly given in evidence against Mrs. Moore, and consequently, against her children, who claim through her-. A married woman, being capax doli, is not protected against the consequences of fraud, practised exclusively by herself, or in conjunct ion with others, at least to the extent of precluding her from claiming any benefit from her fraud, or from the fraud of another, of which she was conusant, as in the case of an infant. Bauerman v. Radenius, 7 T. Rep. 664, 670, n.; 1 Fonb. Eq. 76; 10 Ves. 161; Phill. Evid. 74, 75. Her acts and declarations are, therefore, evidence against her. as are the acts and declarations of Payne; because his le gal title is the. only impediment to the plaintiff’s demand; and if he were plaintiff at law, they would be competent evidence; and because the acts and admissions of all who have acted jointly for attaining a given object, are mutually evidence against each other as to such object.
Although if a fair foundation for such a conveyance had been laid in proof of a bona fide consideration, and there *579 were no grounds to impute fraud to the transaction, other than the inequality of the values of the consideration and the compensation, the transaction might be favoured, so far as not to weigh nicely the respective.values of the things given and received, (unless the inequality was so gross as, in itself, to amount, to evidence of fraud, as in transactions between strangers;) yet where there is other evidence of actual fraud, such inequality, although not solely sufficient to establish tiie fraud, is a circumstance entitled to great weight.
If there had been proof of such a. consideration and original contract, as are insisted on, this case would have been like the cases of Quarles v. Lacy, 4 Munf. 251; and Blanton v. Taylor, Gilm. 209; where the inequality of value was corrected, and the wife was permitted to retain to the Value of the dower interest, surrendered in the confidence that she was getting an indemnity. Those cases turned upon this consideration; that the wife, in the confidence founded on an actual contract with the husband, that she would have a compensation for her dower, had relinquished it; and the fraud was imputed solely to the husband, as otherwise the wife might bo irreparably injured. But hoi' privity to the fraud had still the effect of limiting her strictly to an equivalent.
Upon this view of the case, I think Payne’s evidence was inadmissible. But, if it were otherwise, I should think that it would lead to au issue to be tried by a jury; since the other facts in the case so strongly contradict his testimony. It is true, that a naked trustee, against whom no claim can be had, either for costs or otherwise, is a competent witness for his cestui que trusts. Yet, when his title: is impeached upon the ground of actual fraud, in which he participated, he is incompetent, because he is liable for costs, and for other consequences, according to the circumstances of the caso; as hero, if the plaintiff succeeded, Payne, if it became necessary for the purpose of satisfying the demand, would be liable to account for the hires and profits of the slaves received by him, as stated in his an *580 svver. A particeps fraudis is not only liable for costs, but may Pq otherwise liable; and is not permitted, by his own evidence, to repel the charge of fraud in which he participated. 1 Mod. Rep. 107; Goss v. Tracy, 1 P. Wms. 287; 1 Black. Rep. 366; Gilb. Evid. 123; 1 Doug. 140; 12 East. 250; 4 Taunt. 328; 6 Taunt. 220; 1 Ball and Beatty, 104, 414; 2 Vin. 287; Harr. Ch. Prac. 566; Phill. Evid. 42, 48; Amb. 592; 2 Ves. 628-9; Croft v. Pyke, 3 P. Wms. 180. In addition to the other matter in this cause, it appears by Payne’s own deposition, (which may be resorted to for the purpose of shewing his interest, without reading it as evidence in chief,) that when J. S', Moore presented him a deed, which he supposed was made in pursuance of the contract now insisted on by the defendants, he rejected it as no better than blank paper; and he himself caused the deed which was executed, to be prepared. He then caused a deed to be prepared, reciting a consideration which he knew to be false, and conveying the whole personal property of a man in insolvent circumstances, which property grossly exceeded in value the pretended consideration. He repeatedly avowed, that the deed was intended to defeat Moore’s creditors, and treated the property, in some respects, as Moore’s. He was, therefore, not only particeps fraudis, but seems to have been the principal agent in, and contriver of, the fraud.
The third issue is immaterial; but, if it were material, I should think that the plaintiff had failed in his proof; the return of the Sheriff being no evidence against the defendants, especially as the Sheriff was examined as a witness, and not interrogated as to that fact.
It is admitted, that the deed was fraudulent in conveying, under pretence of making to Mrs. Moore a just equivalent for her dower, property to three or four times the value of her dower interest. If she had been a person sui juris and privy to this, it would have avoided it in toto; but being a married woman, this fraud is not to be imputed to her, nor to her children, who were probably infants, *581 arul vvno do not seem to have had any agency in the trails-action. To whom then is this fraud to be imputed ? To Moore and Payne, especially the latter. He was the brother-in law of Moore; was the adviser of the original arrangement; no doubt knew well the value of the dower Interest; and took an active part in preparing the deed, and, indeed, was the sole actor in that respect. He is the duly party to this fraud, who is before the Court. But for this fraudulent excess in the pretended compensation to Mrs. Moore, the plaintiff’s demand might have been satis - fied without difficulty, near fifteen years ago; and he would have avoided the delay and expense and vexation of this protracted litigation. Who, then, ought to pay the costs» of this sui1 ? Not Mrs. Moore, or her children; who, (upon the supposition that the deed is good to Hie extent of a just compensation for her dower relinquished,) are innocent; but Payne, the only party to the fraud which has produced all this mischief, who is before the Court.
1 think the decree should be reversed, and the deed declared to be fraudulent and void.
Judge Coalter.
The affirmance ol' this decree, so far as it declares the deed of trust valid, depends much on the question, whether George Woodson Payne, the trustee in the said deed, is a competent witness.
It is admitted on all hands, that if lie is, bona fide, and without combination or participation in any fraud, (if any has been committed in this case,) a mere naked trustee; and has done no act subjecting him to any suit, in consequence of his being trustee as aforesaid; and if the case, independent of his evidence, shews this to be his condition, that then he is a competent witness.
But, it is said, that although he may be, bona fide, an innocent naked trustee, as aforesaid; yet, that if the appellees are unable to prove the real consideration of the deed, *582 stated in the answer, that deed must be declared ir;u dv ■ lent and void as to creditors; and, that although he might have been ignorant that the consideration expressed in the deed was not the true consideration, yet that legal, if not actual fraud is imputable to him, and that this is enough to exclude him.
The deed, upon the face of it, expresses the consideration of £1,000 paid by the trustee; but the declaratio i of the trust states the real consideration, to wit: her relinquishing dower in lands her husband, the grant oj in the deed of trust, wished to sell. Now, although the trustee might well know that he had never paid the £ 1,C00, or the $100, or $1, which might have been stated as paid by him to the grantor; yet the deed does not inform him, that the other consideration was incorrectly or uniiuly stated. Payne does not subscribe the deed, and consequently, it does not appear from it, that he was present at its execution, or had any agency in procuring it to he executed.
Suppose the deed had stated, what Mrs. Moore, in her answer, says was the true consideration, to wit: that when she relinquished her dower in the lands mentioned in the deed, her husband had promised to settle property on her, &c.; and, that the deed was made in consideration of : hat promise. This statement in a deed made after marriage, would not have been conclusive on the creditors of the husband. It might, in fact, not have been true; or the deed might have conveyed more than a just equivale nt. But, if the trustee was ignorant of its falsehood, and had no agency in procuring this false and feigned consideration to be expressed in the deed; he surely could not he l’esponsible for this fraud committed by others, unless Iho second proposition above stated, is correct.
It will perhaps be right to throw out of this enquiry, the answer of Payne. But, if any part of it is relied on to shew his agency, orto charge him with any responsibility, then I think it but justice to take it all together, and *583 frivc ü all the force of an answer; in the same manner as if we were now about to inculpate him with ¡m actual fraud, and subject him to damages, in consequence (hereof, So too. if any part, of his deposition is resorted to, in order lo prove sets in him, which might subject him lo an action; surely it will be, right to tafee all that he si} s, in order to see whether lie lias boon guilty of actual fraud. We must decide on his liability, according to «bat appears in this case, not according lo what we, might suppose would appear in another ease. We know not whai would be proved, on either side, in such oí her casi».
His answer, if it is to ho taken into view, shews that he is innocent of any fraud, and particularly of that charged in Hie bill, and of which he is not, (-ven charged of having any knowledge; viz. that the deed wat made long after marriage, and withnvt co-nsitierolion.. In considering this point, it may also bo worthy of remark, that there is no charge of any fraudulent, combination on'the, part of the trustee, to defeat creditors; but be, seems to lie, treated asa mere naked trustee, having the legal title in him of a subject, which, though in him under a deed good between the parties, is nevertheless a Hedged to lie void as to the creditors. It does not even alledge the fact, of which he might have been ignorant, that the lands spoken of in the deed, and for which, it would, seem, she* was to relinquish her dower, had been conveyed and the dower relinquished long before the execution of that deed.
The answer of Mg co-defendant, it is true, admits that the consideration expressed in the deed is not strictly correct. She states, that, site bad agreed to relinquish her dower, on a promise by her husband to make a settlement, without which promise, solemnly made, she would not so have relinquished; hut whether the deed of trust was he fore or subsequent to the relinquishment, she knows not It turns out that it was subsequent; but if she was igno - rant of this, so might the trustee be also. She of course could not have been present at, its execution, haying trust *584 ed to her husband and friend to see it done. Being n<v glected by them, however, until after she had relinquished, the statement in the deed that she was to relinquish, was substantially, though not literally, true. All then that could be said as to the trustee, had he known the facts s1 uted in her answer, and been also apprised that she had already relinquished her dower, would be, that the deed substantially, though not literally, recited a good and valuable consideration; that it was now executed as it would have stood, had it been executed at the proper time. Thh is not such a false consideration, as to inculpate him with actual fraud; for it could do no injury; was in substance tine; and the creditors equally at liberty to controvert it, as they were to controvert the literal truth, had it been stated. Besides, this misrecital of the facts, as the case thou stood, could not be such a fraud as to preclude the wife from stating and substantiating the case as it'really was; Blanton v. Taylor, Gilm. 209; and unless it is such a transaction as will bind her to the words of the deed, so that she cannot go back to the origin of the transaction, i( cannot bind her trustee thereto. But this has not boon pretended in the argument.
But it is said, that an execution in favor of the testator of the appellant, was levied on the trust property, and that the Sheriff returned, that the sale was forbidden by Payne as trustee, and no person appearing to indemnify, the negroes were delivered to him.
This execution is dated in November, 1809; in the lifetime, as I understand, of Moore the husband. The answer of Mrs. Moore says, that she never heard of such execution being levied; and so does Payne, if his answer is to be regarded. It will appear hereafter, that the deputy Sheriff who made this return, knew of this deed of trust previously, and may have been told that the sale would be disputed, and did not deem it necessary to go to the trouble of actually levying the execution. If the negroes wore levied on and taken away without a delivery bond, and *585 kept until the day of sale, it is strange that these parties should be ignorant of it, or that it could not be proved, The return does not state, that a delivery bond was taken. This return may be evidence against the Sheriff, but is no evidence against the parties. This point was certaiuly nol deemed important, or it could have been proved, if the fact existed; but even this very deputy Sheriff, who is examined for the appellant, is not examined as to this point.
But it is said, that this interposition by the trustee subjects him to an action, if the deed is avoided. True; even the making of ilia deed, if ho united and conspired to commit a fraud on creditors, may subject; him to an action for any injury flowing from that deed; but if he can be so inculpated, it will not be contended that, he Is a competent witness, whether ho did this or not
But, if be believed the deed to be on bona fide consideration, although the parlies interested may be unable to prove that consideration, it is admitted that it would have been his duty to forbid the sale, and force the testator of the appellant to give bond to indemnify the Sheriff; or to resort to his bill in equity, as he has done. Unless then, the second proposition can be maintained, that the trustee is io be answerable, even for doing Ms duty, because ihe deed is finally set aside, I cannot perceive that this act, it it had been proved, would have made him incompetent.
But, it is said, that the witnesses -prove, that no such consideration, as that stated in the answer, did exist; that the trustee knew it; and that this proof is even strong enough to ascertain his disposition, if read in the cause; and that, consequently, he is chargeable as for actual fraud and, combination, and so cannot be heard as a wit■ ness. ■ .fíen,/amin Sheppard, the deputy Sheriff who made the return aforesaid, is examined. He says, that in 2804, he, with others, purchased a lot in Richmond of ./. S. Moore, and being called on for some money before the deed was made, it was refused on the allegation, that they had heard that he, Moore, had conveyed all his property *586 to George TV. Payne, in trust for his wife and children, and that they must have some time to get information as to the title; and that both Moore and his wife said his proPerty was dear from incumbrance. But, it will be observed, that the subject of this purchase was real estate; and it is not pretended that any of his real estate was ever conveyed to Paynej and, moreover, that this was before the deed of trust in question, of slaves, &c., which was execu - ted in 1805. But, this shews, that a deed in her favor, with Payne, her friend, as trustee, was then spoken of as having been executed, as it ought to have been years before that; and is a circumstance corroborative of her answer; and even if that deed had been executed, or she had believed it had been executed, this conversation as to the real estate, which was, and remained unincumbered, would have had no bearing on it. He says, further, that in 1807, he levied an execution on one of J. S. Moore’s slaves, old Tom, he thinks, and that, on the day of sale, G. TV, Payne told him of the deed of trust to him, of this slave, and many others, for the benefit of Mrs. Moore, and her children; bid, said it was not his intention, or that of Mrs. Moore, to prevent the property from being sold for the payment of any of Mr. Moore’s just debts, and that he executed to the deponent a relinquishment.
The witness further pi’oves, that Payne said that J. 8 Moore had been in the habit of making injudicious bargains; and that it was the intention of the said J. 8. Moore, Mrs. Moore, and him the trustee, so to secure the property, as to prevent its being sold to secure the payment of debts of that description. So far, this witness is very minute as to every thing that will shew a fraud in the trust; insomuch that he either imputes to Payne a downright falsehood, fabricated for the purpose of destroying his own deed, or that J. S. Moore admitted Ms own habit of making injudicious bargains, and a wish thus to prevent their payment. Some men are willing rather to be thought knaves than fools; but, here is one who, from this account, *587 is willing to he Hi ought both. I hardly know which is the most improbi ble story of the two. Neither, supposing the witness to stand fair, can be accounted for, except that after the lapse of five years (which had passed over lie-tween the circumstances spoken of, and the time of taking the deposition, during which, or a part of which time, the, witness had been pondering on those circumstances, under the influence of interest,) he may have been led into an error on this subject. He is asked, whether he and others have not a suit ¡lending, to set aside this deed, as being void as to creditors ? If he liad no such suit depending, he could have answered, no. Hut, he says, a suit is depending by himself and others against the representatives of J. S. Moore and B. Moore, the object of which will appear by a reference to the record. Would he have referred to this record, which might cost the parties great expense to produce, if he could at once have given the answer no to this question? I think not; or, if he could, he has, to say the least, a leaning against the appellees. I take it that he is interested in setting aside this deed, though ho may he considered as not interested in this suit; and that, as before said, he has dwelt on these conversations, under the influence of interest, until he really thought what, he said was true. How else can we account for his totally forgetting (for, 1 will not impute a toilful suppression of truth,) what he honestly confesses, when reminded thereof, by cross-interrogatories ? He is asked, whether G. W. Puyne or Mrs. Moore stated any consideration for the conveyance; or, if he understood that it was intended merely to prevent a further credit to J. S. Moore? He says, (not in the precise words I use, but in substance; for, were I to use the very words, some confusion might appear in (he witness, which I do not wish to impute to him,) that, in addition to the consideration before mentioned, (that is, the consideration of defrauding creditors,) Payne did say the deed was made in consideration of Mrs. Moore, having relinquished dower *588 t° land sold by Moore and wife lo Mosby, several years before the deed of trust; and that the witness asked him, why the deed of trust was not executed at the time; to wh'ch he answered, that it was delayed for no particular cause, but that he considered the deed was entitled to the same force, as if it had been executed on the very day the relinquishment of dower was made; as he considered it a continuation of the contract. It is said, however, that this is proof of a mere declaration of Payne, that the deed was executed after the relinquishment. But, (‘.veil in that view, it goes a great way. Else, why ask, why it was not executed at the time? And why, if only thought of after, should it have been as good, as if made when she relinquished her dower? And how could it be a continuation of a contract, if none had been made ?
Instead, then, of an acknowledgment that this deed was altogether intended to defraud creditors, it turns out from all that was said, to be a deed for valuable and fair consideration; but, which the parties, for reasons best known to themselves, did not wish to enforce against this creditor;—perhaps a small debt, concerning which, they did not wish to involve themselves in a dispute. This witness, then, shews nothing unfair in the trustee, which creditors can complain of; and it does not appear, that the cestui que trusts have complained.
George Underwood says, that he heard G. TV. Payne say he had got J. S. Moore to convey the whole of his property to him, in trust, in order to prevent its being taken to pay his debts; but observed, if care was taken, the estate, by its profits, would pay his debts. This, he says, passed at the house of Archibald Dandridge and in his presence. Archibald Dandridge says, he never heard such conversation, but has frequently heard Payne speak of the deed, and, that it was made in consideration of the relinquishment of dower by Mrs. Moore. Now, the above witness might have heard, and doubtless did hear, of such a deed; the consideration might have been *589 stated, as the other witness says always was the case, when the deed was spoken of in his presence; but this may have been forgotten by the other witness; and it might also have been said, and properly too, if the deed was bona fide, and for the consideration stated in the answers, that the object was to prevent creditors from taking the property, as they would have done, had the deed not been executed; leaving nothing for the wife.
The other depositions, exclusive of Payne’s, tend to prove fairness in the transaction, and to corroborate the answers of both defendants; and the deposition of Puyne proves, without doubt, if he is competent and credible, the defence set up.
If Payne’s deposition is rejected, and in consequence thereof this deed is set aside, I can see nothing either in the form of this bill, or in the testimony, which can charge Payne with a combination to defraud creditors, or any thing that can lay him liable to the action of the creditors, or to a decree in this case. As to the hires, if he has paid them over bona fide, to his cestui que trusts, before notice of this suit, he is not responsible; and so far as he has not accounted, ho is equally responsible to either party. But, nothing of this kind is pul in issue,- or al« ledged as aground of charge against him; and, if he is responsible, it must be because, however fair his conduct, yet as his deposition cannot be read, the deed must be set aside, and he made responsible for damages; in other words, he being a material witness, and there being no other evidence in itself sufficient to support the whole defence; and as without him, the deed must be set aside, so he cannot be a witness. That is to say, a trustee cannot he a witness, if the cause or defence cannot be supported without him.
1 do not think this is the law, and that therefore there is nothing in the second proposition above-stated.
The result is, that Payne is a competent witness. 1 think him also credible, and consequently the deed cannot *590 be set aside; and so far the decree is correct. But, 1 am not prepared to say that the bill ought to have been dismissed.
^ will be recollected, that at the time Mosby was examined, Mrs. Moore was a widow; and if she had not relinquished, would then have been entitled to dower; and he may have had in his mind, the value of a dower interest actually vested. On the other hand, a man involved in debt is about to sell his lands; and his wife will not unite. He will probably sell at a loss equal to the value of her dower, had it vested on his death. Sales of this kind must be at a loss. If the right had accrued, the purchaser could make a previous bargain with the dowre-ss. But here, all is uncertainty. He may improve, and she knows not how the dower will be laid off, &c. I think, therefore, a husband can well afford to give a full price for such relinquishment, and that a jury or a commissioner, as the case may be, ought to do the same.
I am of opinion, that the decree, so far as it dismisses, the bill, ought to be reversed with costs, against all the appellees except Payne, and the cause sent back to the Court of Chancery, to have the value of the dower interest, conveyed by the appellee Jinn C. Moore, as well in the Hanover, as the King William land, ascertained; unless something shall appear as to the latter which ought to exclude them; and also the value of the property in the deed of trust; and that the appellant receive satisfaction of his judgment out of the latter, so far as it exceeds the former; on which excess, hires and profits are to be charged, if necessary; and to be proceeded in, to a final decree, according to these principles.
Judge Cabell.
This is a bill to set aside a deed of trust on the ground of fraud.
*591 The principal difficulty in the case, is as to the competency of George Woodson Payne, the trustee, and one of the defendants in the cause.
It is perfectly clear, that the mere circumstance of a man’s being trustee, is no objection to his competency; nor is it any objection that he is a co-defendant; nor that he is both trustee and co-defendant.
The true question is, whether he is interested.
It is said, that fraud is odious, and that although a mere naked trustee may be a witness, yet it would be monstrous when a deed is impeached for fraud, in which the trustee participated, and for which he is liable, to permit him to support the deed by his own testimony.
All this is readily admitted. But, the odious nature of fraud is no reason that it should be imputed without proof. On the contrary, it is a strong reason, both in humanity, in justice and in the law, that it shall not be imputed to any person until it is first proved. Circumstances, it is true, will be received, and ought to be received, to establish it. But they must be such circumstances as the law regards as proofs. The mere allegation, by one party, that the transaction is fraudulent, will not suffice. Innocence is not to be blackened, nor just rights defeated by denunciations, however loud, if not supported by testimony.
The deed, in this case, shows no interest in the trustee. He ought, therefore, according to the general principle, to be admitted as a witness, unless it be otherwise shewn that he is incompetent. The ground allodged, here, is that the deed is fraudulent, and that the trustee participated in, and is liable for^lhe fraud. But, in the language of Lord Hakdwicke, the allegation must be supported “by material evidence, such as the Court or a jury would lay weight on.” Dixon v. Parker, 2 Vesey, sen. 219. Such evidence is wanting in this case. The circumstance mainly relied on by the appellant, is the difference between the consideration stated in the deed, viz: a future relinquishment of dower to be made by Mrs. Moore, and that stated *592 by the witness, Viz: a previous contract to relinquish lier dower. But, this seems, to me, an unimportant circuíastance. Both considerations were lawful, and either of them would be sufficient. There was, therefore, no motive for misstating the consideration expressed in the deed, and it was, in all probability, the result of inadvertence on the-part of the trustee, or of the lawyer who drew the deed,
I see nothing in the record from which to impute censure to Mrs. Moore or her trustee. Moore was evidently a very improvident man. He was desirous of converting his real estate into money, which his wife and her friends thought might be wasted; and they wisely and justly insisted on an equivalent for Mrs. Moore’s interest in the lands. That was effected by the deed of trust. Give to Moore’s creditors all his estate; but do not take that of his bona fide alienees. This would not be allowed even as against an ordinary purchaser for valuable consideration. But what purchaser, even for valuable consideration, is more meritorious than a wife who, as the consideration of the purchase, has relinquished the fast hold which the. law gives her on the real estate of her husband ? On this point I refer to the strong cases of Quarles v. Lacy, 4 Munf, 251, and Taylor v. Blanton, Gilmer, 209.
Much stress was laid on what were said to be the acknowledgments of Mrs. Moore, and her trustee, George Woodson Payne. I will remark, that nothing is less satisfactory to my mind than a concession or acknowle dgment deduced from the evidence of transient conv< nations. A single circumstance, or a single expression, misunderstood or not adverted to by the witness, will give to the conversation as detailed by him, an aspect entirely different from that which it bore as it fell from the pfu iy; and will lay the foundation for inferences which he never dreamt of. As to the declarations of Mrs. Moore, lhat her husband’s property was unincumbered, they musí be taken in reference to the subject matter of those declarations, his landed estate, and not the personal properly- *593 which 'was the subject of the deed now in controversy. Besides, at the time when she made those declarations, the deed now in question had not been executed; and, 1 bore-fore, even his personal property was free. As to the declarations of Payne, that the deed was made to protect the property from the payment of Moore’s debts, in the first place, the evidence on this point is not free from doubt. But, admit it to be what the appellant wishes to represent it, still it proves nothing which can affect the validity of the deed. The declarations of Payne cannot, by any fair construction, when taken in connection with the other circumstances of this case, be considered as referring to the consideration of the deed. It is certainly true, that a deed made on no other consideration than a desire to screen the property which it conveys, from the payment of the debts of the grantor, is clearly fraudulent and void. But, if the deed be founded on fair and legal consideration, (as this was,) it is no objection to the validity of the deed, that the parties intended that the property should be no longer subject to the debts of the grantor. Such object, then, becomes just and legitimate, and is very often avowed in the deed itself. It is always so avowed in, every correctly drawn deed of trust in favour of a married woman. In such a case, it is the very object which renders necessary the intervention of the trustee; and never was it more necessary than. in the case now before us. The declarations, therefore, ascribed to Payne, not impeaching the consideration of the deed, prove motives perfectly consistent, both with law and equity.
The only circumstance entitled, in my estimation, to any weight, is, that the value of the property conveyed by the deed, exceeds, probably, the value of Mrs. Moore’s interest in the lands. But, if it be excessive, the two eases above referred to, shew that the provision made for the, wife, is to be disturbed to the amount of that excess only. The real value of her interest in the lands ought, therefore, to be ascertained; as also, the value of the property *594 conveyed by the deed of trust, in order, that if there be any excess of the latter, it may be applied to the payment of Moore’s debts.
The decree of the Chancellor, so far as it dismisses the bill, ought to be reversed, and the cause remanded io be finally proceeded in, according to the principles abovo expressed

 Judges Carr and Brooke, did not sit in this cause,