Makshaie, CA. X
 

 delivered the opinion of the- Court as follows :
 

 This is an appeal from a decree made in the Circuit of the United States for the district of Rhode Island,
 

 The Appellee filed his bill in that Court, praying that ^ie Appellants and James Munro, Samuel Snow, and Benjamin Munro, late merchants trading under tlie firm, of Munro, Snow and Muns'o, might be decreed to pay him the amount of.a bill of exchange drawn in his. favor at Batavia, by Benjamin Munro, at nine, months s%-*t, on Messrs. Danod Cromrcwdin and sons, mcrAmsterdam, l'or the sum of 21,488 guilders on of advances made by the said Riemsdyk for the use of (he Defendants in the Circuit Court.
 

 In'he year 4805, John Innes Clark and Munro,. Snow and Munro, being joint owners of the ship Pat. hi eqic-l moietit's, projected a voyage to Batavia, and appointed Benjamin Mu uro. one of the bouse of Monr'», Snow and Munro, supercargo. The ship car. i’h;d out some goods on account of the owners, and other goods oA account of different persons, the whole .to be hi vested in a return cargo, ¡mlfche profits of which tlie ship owners were, to receive 45 per cent, instead of tVeitriit.
 

 The bill charges that the supercargo was empowered verbally, irr case of a deficient y of funds at Batavia, to load the ship with a return cargo,' to take up money on tihe joint account of the owners, and, if necessary, to draw bilÍ9 of exchange therefor on Messrs. Daniel Croinmelin and sons, of Amsterdam, or on the owners,
 

 The Patterson returned in thé spring of 1806, with a cari?0 derived from the funds taken out in the outward
 

 ^ , In March, 1806, the Patterson again sailed to JBajaT‘a 0T1 íl .v,)faoe b1 all respects similar to the first. That pai’t of the cargo which was furnished by the owner»
 
 *155
 
 Consisted of wines and some other inconsiderable cíes. Being unable to sell the wine in Batavia, the supercargo placed it f>r sale in the hands of Mr. Yan Riemsdyk, che Defendant in error. Rather than return without filling the vessel for the owners, lie drew bills on them to the amount of g2,389 89; and also drew on Messrs. Crommelin and sons, merchants Amsterdam, the bill for which this suit was brought, The bill is drawn by Benjamin Munro in his own name, but it contains a direction to charge tiie same'to. John Irons Clark and Munro, Snow and Munro, merchants of Providence, Rhode Island, North America. Of these proceedings the owners were regularly informed by letter from Benjamin Munro, their supercargo.
 

 Semb : that $ discharge una“en’yyCtofot Rhode island (°f ^6)f™™ con’tra(;ts and deman such dis
 
 Prende
 
 ”Po? aii the debtor’s property, will against debt contract-c0uatly.01’e!Si>
 

 , The ship returned safe in March, 1807, and the proceeds of the cargo purchased by these bills were ret eived by the owners. The bills drawn on the owners were duly paid; but no provision was niade for tiiat drawn on Daniel Crommelin and sons.
 

 In May, 1807, the ship proceeded on a third voyage to Batavia with Benjamin Munro again supercargo. .The owners appear to have relied .on the wine placed in the hands of Van Riemsdyk on the second voyage, for producing the funds with which to procure their part the return cargo. In June, 1807, Munro, Snow and Munro became insolvent; and, according to the laws of Rhode Island, obtained a certificate discharging them froin the claim?, of their creditors, so far as such discharge could. he affected by a law of the state. They had previously transferred, for a valuable consideration, to John Inaes Clark, ail their interest in the ship, the return cargo and the accruing freight, the whole of which came into his possession on the return of the vessel. In December, 1807, the hill \vas presented to Messrs. Daniel Crommelin and sons, and protested for non-acceptance- ; and in October, 1808, it was protested for non-payment. Neither Clark nor Munro, • Snow and Munro had any funds in the hands of Messrs. Daniel Crommelin and sons.
 

 Johii Iniies Clark departed this life in November, 1808, having first made his last will and testament, of which the Plaintiffs in error ere executors, who have
 
 *156
 
 assets in their hands more than sufficient' to satisfy the claim of Van Rieinsdyk.
 

 The Defendants, Munro, Snow and Munro, in their answer, acknowledge all the material allegations of the bill, and expressly admit the authority of Benjamin Munro to draw the bill of exchange for which this suit was instituted. But they state their insolvency ; and claim the benefit of the certificate of discharge granted them in pursuance of the laws of the state of Rhode. Island.
 

 Clark’s executors deny that Benjamin Munro had any authority to take up money on credit for any purpose whatever,, or to draw bills of exchange; and assert that both the Complainant and Benjamin Munro kn w that he had no such authority. They admit that if the money was taken up, it was for the joint use of the ship owners, but not on their credit. It was, they say, on the sole credit, of Benjamin Munro.
 

 At the hearing, the hill whs dismissed as to Munro Snow and Munro, and a decree was made ■ against. Clark’s executors for the sum of gf 1,526 being the amount of the sum specified in the bill of exchange in the Complainant’s bill specified, together with ten per cent, damages for the non-payment thereof, and interest upon both these sums, from the time when the said bill of exchange became due to the time of rendering the deci ee.
 

 From this decree the executors of the said Jolin Innes Clark-prayed an appeal to this Court.
 

 In determining the extent of' Clark’s liability, the authority of Benjamin Munro to draw this bill becomes a question of material importance. If the answer of Munro, Snow and Monro, or their depositions taken in the cause, be admissahle evidence against Clark’s executors, this question is decided. But toe admissibility of tlieir answer, for this purpose depends on the establishment of such apartnership as would authorize the draft of Munro as one; of the partners
 
 ;
 
 and the admissibility of their depositions depends on their being rendered disintereste'd witnesses by the certificate of discharge sta*
 
 *157
 
 ted in the proceedings. The, Court, being satisfied on neitler of these points, will exclude both the answer and depositithms, and consider the cause independeritly of them.
 

 The letter of Benjamin Munro, written at Batavia, on the 3d of November, 1806, the day on which the in favor of Van Riemsdyk was drawn, and addressed to John Innes Clark, esquire, and to Messrs. Munro, Snow and Munro, contáins these passages — « Í have
 
 ft
 
 shipped on board the Patterson,, on your account- and « risk, 505 Pecois Jacatia coffee, agreeably to invoice ■« and bill of lading inclosed.. I have drawn on you .for « -the amount of $2,389 89, at ninety days sight, in faff vor of the several officers, &c. oh board the Patterson, « being the amount of money they bad remaining over «their priviliges, and which 1 have allowed them 15
 
 *t
 
 peí» cent, advance thereon, and which drafts you will « please to honor. A statement thereof I annex. ,1 have « also drawn on Messrs. Daniel Crommélin and sons, « merchants, Amsterdam, at nine months sight, in £a- « vor of the honorable William. V. H. Van Riemsdyk of -« this place for the amount of 21,4.88 guilders on account <«, of the Patterson, and which bills you will, no doubt* « prepare fdK timely, as Ihave written those gentlemen.” «< I leave all the Maderia wine in the hands of the ho- « noráble Mr. Reiinsdyk, as. it will riot sell at all, I « transmit his receipt for the same. I have received ho
 
 ft
 
 advance,on the wine.”
 

 To this letter was annexed a statement of the cargb of the Patterson, containing this item — « For owners of Patterson, 505 Pecols coffee.” „
 

 There was, also the following memorandum:
 

 « Memorandum of hills payable by you at ninety f days .sighty viz s
 

 . « Captain lamps Shaw; 1st, 2d, 3d, exchange,
 
 ft
 
 $748 .75, &c amounting in the whole to $2,389 89.
 

 .« Amount of bills drawn On Messrs. Daniel C omine-, «lin and sons, merchants, Amsterdam, payable! by them
 
 *158
 
 « at nine months sFght, in favor of the honorable Wm. « Y. H. Van Riemsdyk, viz:
 

 « Four .bills of exchange, 1st, 2d, 3d, 4th, for the
 
 **
 
 amount of 21,488 guilders, equal to §8,595. I have « allowed Mr. Riemsdyk on the money, 20 per cent, “ advance/’ -
 

 It is impossible toread this letter and these memoranda without feeling a conviction that Benjamin Munro believed himself to be acting within the scope of his authority, and supposed that neither his bills on the owners, nor that on Crommelin and sons, would be considered by them, as an extraordinary or unexpected transaction. He makes no apology for what had been
 
 done;
 
 gives no description of his difficulties and embarrassments at being disappointed in Batavia by not receiving the funds on which he relied for their return cargo, and of his doubts whether the measure to which he had resorted in consequence of that disappointment, would be approved by them. His language is the language of an agent acting within his powers on a contingency .which had been foreseen and provided for. Having stated the bills drawn on them, he' adds, in the usual style '-of letters of notice, « which drafts you will « please to honor.” -After stating the drafts on Croramelin and sons, he adds,which bills you will no doubt « prepare for timely, as
 
 l
 
 have written those gentlemen.” This is not the language of an agent conscious of having transcended his powers. -
 

 Biit it will be admitted that the opinion of the. agent on the extent of his powers will not bind his principals. Let us, then enquire,-so far as the testimony will inform us, into the opinion entertained on this point by the principals themselves,
 

 On theJLst of November, 1806, at Batavia, Benjamin Munro stated an account current between himself and the owners of the. ship Patterson, according to which tjie executors of John fnn.es Clark admit the settlement to have bee-tn made on the arrival of the,vessel. That account debits the owners with §9090, the amount of inVoice of-505 Pecois of coffee shipped on board the Patterson, on their account and risk, and with the 15 per
 
 *159
 
 cent, advance on the bilis drawn.on them, and the 20 per cent, advanced'on the bills drawn 'on Crommelin and sons, and credits them with the amount of those bills. The entry of the last mentioned bills is thus expressed, « bills drawn on Messrs. Daniel Crommelin and sons, « payable by you at nine months sight.”
 

 This account charges the owners with the disbursements of the vessel, which exceed the funds in the hands of Mu.nro, other than those produced by the bills of exchange,. so that the whole return cargo Mas purchased by these bills. Not a sentence escapes either of the owners, disapproving the conduct of Muhro, or expressing surprize at it. . With that full knowledge of the whole transaction which is given by the letter of Muriro, by the statement annexed to it, and by the
 
 account;
 
 With full information-that, the whole cargo was purchased with hills drawn on them and on a house in Amsterdam, to be paid by them, they receive the cargo and dispose of it .to a very considerable pr ofit. Can they How be permitted, in a -Court of conscience .to question the authority by which the bills were drawn.
 

 The. circumstances which prove their acquiescence fa thl& authority are not yet exhausted. The Patterson sails on a thiyd voyage to Batavia, and Benjamin Monro is again supercargo. His conduct in drawing bills on, the second voyage is not censured. He is not informed that this is a power riot confided to him ; that h<5 has mistaken the extent of his
 
 authority;
 
 that his principals are not bound by his drafts. He goes again tir India in the full belief that bis conduct had met with perfect approbation* arid that no intention existed to throw upon him the bills he had drawn bn Amsterdam for monies, with which he had purchased the second cargo. - In this belief the proceeds of the wines, placed in the hands of Yari Riemsdyk, are drawn out of his hands and.invested in another return cargo for, the owners of the Patterson.
 

 Had there not been, an entire acquiescence in the bill drawn by him on Crommelin and sons, a full admission on the' part of his principals that tliey were responsible for that bill, and that no attempt would be made to throw it on him, can it be believed that the proceeds of these
 
 *160
 
 wines would have been invested in a return cargo for the owners of the ship? Had Van ftiemsdyk suspected that the owners would disclaim the authority of their supercargo to draw' bills, and would.fail to piáce funds in Amsterdam to meet theta, and would endeavor to turn him over to that supercargo for payment, is it ere». dible that he would have permitted the proceeds of this wine to pass out of his hands without an attempt to secure himself?
 

 These circumstances strengthen the conviction growing out of the whole conduct of the owners, that in drawing the bill for which this suit was instituted, Benjamin Munro acted within his authority.
 

 This testimony is opposed by the answer of Clark’s
 
 executors;
 
 and.the rule that an answer must prevail uhless contradicted by one witness as well as by circumstances, is said to be so inflexible thot the strongest circumstances will not themselves be sufficient to outweigh an answer.
 

 The general rule that either two witnesses or one witness with probable circumstances will be required to outweigh an answer asserting a fact responsively to a bill, is admitted. The reason upon wiiich the rule stands, is this. The Plaintiff calls upon the Defendant to answer an allegation he makes, and thereby admits the answer to be evidence. . If if. is testimony, it Is equal to the testimony of any other witness; and as the Plaintiff cannot prevail if the balance of proof be not in his favor, he must have circumstances in addition to his single witness, in,order to turn the balance. But certainly there may be evidence arising from circumstances stronger than the testimony of any single witness.
 

 The weight of an answer must also, from the nature of evidence, depend, in some degree, on the fact sta! <•(][. If a Defendant asserts a fact which is hot and cannot be within his own knowledge, the natur e of his testimony cannot be changed by the positiveness of 'his assertion. The strength of his belief may have hetraved him into a mode of expression of which he was not fully apprized. When he intended to utter only a strong conviction of the existence of a particular fact, or what he deemed an
 
 *161
 
 infallible deduction from facts which were known to him, he may assert that belief or thatdeduction in terms which ■convey the idea of his knowing the fact itself. Thus, when the executors say that John Innes Clark never gave Benjamin Munro authority to take up money or
 
 to
 
 draw bills, when they assert that Riemsdyk, who was in Batavia, did not take this bill oh the credit of the owners of tlie Patterson, but on the sole credit of Benjamin. Munro, they assert facts which cannot he wit Bin their own knowledge. In the first instance they. speak from belief; in the last they swear to a deduction which they make from the admitted fact that Munro could show no Written authority. These traits in the character of testimony must be perceived by the Court, and must he al-, lowed their due weight, whether the evidence be given in the form of an answer or a deposition. The respondents could found their assertions only on belief; they ought so to have' expressed themselves; and their having, perhaps incautiously, used terms indicating a knowledge of wliat in the nature, of things they, could not know» cannot give to their, answer moré effect than it would have been entitled to, had they been more circumspect in their language.
 

 But were the Court to allow to this answer all the weight which is claimed for it by counsel,, it would not avail bis clients. It asserts that Munro drew bills without authority from his owners, but does not, assert that his owners never confirmed his acts. It will not be denied that the-acts of an agent, done without authority, may be só ratified and confir.thed by his principals as ts bind them in like manner as if an original airthority.had existed. The application of this principle to .the case at bar is as little tó be denied as the principle itself/ The transactions which have been urged to show an original authority to draw the bill in question, Will be recollected without being recapitulated. The Court is of opinion that they amount to a full confirmation of those proceedings of their agent which had been communicated to his principals, and to an undertaking to perform the engagements he had made for them.
 

 It is urged, on tbq- part of the Appellees, that tliis undertaking is not joint, but Several, and binds each party to the extent of his'interest, and no fartheiv
 

 
 *162
 
 The Court does not so understand the transaction. The undertaking not being express, its extent must be determined by the character of their acts of confirmation, and by the character of the act confirmed.
 

 The bill is to be charged, as expressed upon its face, to John Innes Clark, and to Munro, Snow and Munro.
 

 In his letter of the 3d of November, 1806, addressed to his owners, Benjamin Munro, after mentioning the hills,, says,' “ which bills, you’? (that is, John Innes Clark and Munro, Snow and Munro) «will no doubt prepare for timely.”
 

 In the account with his owners, rendered by Benjamin Munro, and dated the 1st of November, 1806, he charge^ them jointly with the coffee purchased by these bilis, jointly with the premium advanced, and credits them jointly with the amount of the bills. This account is afterwards referred to by John Innes Clark himself as a settled account.
 

 The Court cannot understand the undertaking, proved I>y these papers and by the conduct of the parties, to be other than a joint undertaking of the owners to put themselves in the place of Benjamin Munro, and to pro¿vide funds to take up the bill.
 

 It is tlid unanimous opinion of the Court that the liabiUty of the owners of the ship Patterson1 for the bill drawn by Benjamin Munro in favor of Riemsdyk is precisely thb same as if it had been drawn by themselves. They have made his act their act.
 

 It is said that, evep on this principle, the decree is for too lárge a sum, because the premium and the damages cannot he recovered in a Court of Chancery.
 

 There is no evidence that the contract is riot allowable by the laws of Batavia; nor did the owners, when informed of it, complain bf its terms. This Court can not presume that it is illegal.
 

 The damages form no part of the contract, and certainly cannot be decreed by a Court of Chancery, un
 
 *163
 
 less, by the laws of the place where the bill was drawn, they become a phrt of the debt. Upon this point, the . Court has no information; and for this reason the decree must be reversed.
 

 It is also the opinion of the Court that the dismissal of the bill of the Complainants as to James Munro and Samuel Snow, the surviving partners of Mmu:o, Snow and Munro, was irregular ;
 
 *
 
 and that a decree ought to have'been made against them also. For these causes the decree must be in part reversed, and the cause re^ mantled to the Circuit Court with directions to reform the decree according to this opinion.
 

 The decree qf this Court is as follows
 

 This cause, came on to be heard on the transcript of the record of the Circuit Court of the United States fui1 the district of Rhode Island, and was argued by. counsel ; which being considered, the Court is of opinion that John Innes Clark in his life time, and. Munro, Snow and Munro, the owners of the ship. Patterson, were jointly liable for the bill of exchange, in the Complainant’s bill mentioned, to the same extent as if the said bill had been drawn by them; and that the estate of the said John Innes Clark; in the hands of his executors, is, in equity, chargeable with the said debt, as far as the said John Innes Clark in his life time was chargeable therewith. This Court is therefore of opinion that there is .no error in so much of the said decree of the Circuit Court for the district of Rhode Island as directs the respondents, the executors of the said John Innes Clark, deceased, to pay to the Complainant the amount of the said bill with interest thereon, from thetime when the same became payable to the day on which the said decree was made, and the same as to so much thereof is affirmed. And this Court is further of opinion that the Defendants ought not to have been ordered to pay damages on the said bill without proof that, by the Jaw of the place where the same was drawn, damages were made payable : in which case the persons bound to pay the said bill are liable in a Court of equity, as well as in a Court of law. to pay such damages. This Court
 
 *164
 
 is also of opinion that so much of the said decree ás dismisses the hill of the Complainants ás.to James Munr'o and Samuel Snow, the surviving partners of Munro, Snow and Mutoro, is irregular, and that a decree ought to have been made against them likewise. It is, tlierefore, the opinion of this Chart that so much of the said, of the Circuit Court for the district of Rhode Island, made in this case, as directs the Appellants to pay to the Complainant, in that Court, damages at the rate of ten per centum on the amount thereof, with interest thereon j and so much of the said decree as dismisses, the bill of the Complainant as to-James Munro and Samuel Snow, the surviving partners of Munro, Snow and Munro, is erroneous and ought to be reversed, and the,same is reversed accordingly. And this Court doth further order and decree that the said cause be remanded to the said Circuit Court for the district of Rhode Island with directions to .receive proof of the law of Batavia respecting protested bills of exchange, to conform-its decree to this opinion, and to make the same against the surviving partner or partners of the late commercial house of Munro, Snow and Munro as well as against the Appellants ; all which is ordered and decreed accordingly.
 

 *
 

 It is probable that the Cburt did not observe that the dismissal of the bill as to Munro Snow and Munro, was with the assent of the Complainant