## COLLIER v. CHAPMAN, *et al.*

The answer of a defendant in Chancery, cannot be read at the trial as evidence against his co-defendant; particularly where it tends to invalidate a title made by himself.

IN March 1822, James B. Collier filed his bill in equity in Madison Circuit Court, against Samuel Chapman, John M'Kinley, and James Birney, to subject certain negroes to the payment of a debt due by Chapman, to him.

The complainant charged in his bill, that Chapman owed him the amount of four notes, each for $500, payable in 1820 and 1821, and all executed on the 21st of December, 1819; that at the time of making the notes, Chapman also gave him a mortgage, to secure their payment, on five negroes named Harvey, Taylor, Cupid, Sally and Maria, which mortgage was not recorded; and by accident the mortgage had been so obliterated, that it could not be exhibited; that the defendant, Birney, and one Land, were subscribing witnesses to it; and that the debt remained wholly unpaid. He further charged, that Chapman, combining with the defendants, M'Kinley and Birney, on the 7th of January, 1820, executed a deed including the same negroes, to said M'Kinley, to secure to him the payment of a note for $2,652, which they pretended was due by Chapman to M'Kinley, and to which Birney was security; that the condition of this deed was, that if Chapman did not pay said note in twenty-five days, that the negroes should be delivered to M'Kinley, who should keep them for twelve months, during which time their services should be received in lieu of interest on the debt, and that at the expiration of that time, either they should be sold to pay the debt, or that M'Kinley should take them in payment at certain specified prices, provided said Samuel could make a good title to them, at the option of said Samuel. He also charged, that at the time this conveyance was made, M'Kinley and Birney had full notice of the complainant's mortgage, and that it was contrived for the purpose of defrauding the complainant and securing Birney from loss by reason of his securityship; and alleged that the negroes were then in the possession of M'Kinley. The prayer of the bill was, that the negroes and their hire should be subjected to the satisfaction of the complainant's mortgage.

The defendant M'Kinley, answered, insisting that Chapman was really indebted to him the amount of the note of $2,652, which was dated the 18th of December, 1819, to which Birney was security; and admitted that Chapman had, on the 7th of January, 1820, executed a deed of trust on seven negroes, named Harvy, Caswell, Taylor, Jim, Rix, David and Harriett, in which Birney was trustee, to secure the debt, with condition as stated by complainant; and that Chapman, having failed to pay him, did in February, 1820, deliver the negroes to him. He admitted that Chapman did at the time inform him that Collier held a

mortgage or deed of trust on part of the negroes, which, he did not recollect, but that he also said that he had made arrangements to pay Collier, and that he would not resort to the deed.   He further stated, that he remained in possession of the negroes without any further arrangement, till the 27th of December, 1821; that during that time he had frequently met the complainant who said nothing on the subject, although the respondent's deed had been recorded as early as the 13th of January, 1820; and that on the 27th of December, 1821, he applied to Chapman to close the business, and inquired of him if Collier had been paid, or if he relied on his mortgage, when he again told him that he presumed that the complainant had abandoned the mortgage, as he never had it recorded or said any thing about it, and that he had paid part of the debt; that upon this, having examined the records and found no mortgage recorded, he took Chapman's release upon his deed of trust, and surrendered his note to him.   His answer further stated, that he did not admit the execution of any such mortgage as the complainant set up, and that he relied on the statute of frauds and perjuries in bar of the complainant's claim.   He denied having any thing to do with Birney in the transaction, and alleged that the conveyance to him was *bona fide*, and taken solely for the purpose of securing his debt.

Chapman, by his answer, admits the existence of both debts, and that he executed a mortgage to the complainant of some negroes, he thinks four, names not now recollected, but who were part of those now in M'Kinley's possession; that he executed the deed to M'Kinley, delivered the negroes, &c.   He stated, that when he executed the deed to M'Kinley, the mortgage to Collier was spoken of, and that he told him that he did not expect Collier relied on it; that he had never had it recorded.   He denied that he had never paid any thing to the complainant, and insisted he had paid, on divers occasions, money and other things to a considerable amount, but what amount he does not now know.

Birney, in his answer, responds, that he believes he was a witness to the mortgage made to Collier; that at least he was present when it was executed; that as to the other deed he heard of it from both parties, but that he had no interest whatever in it, nor in the subject of controversy, and denies all collusion or concern with the subject.

At the February term, 1824, on hearing the bill answers and proofs, * the chancellor in the Circuit Court dismissed the bill as to M'Kinley and Birney, with costs; and in June 1826, a final decree was rendered in the same Court against Chapman, on the bill, answers and proofs, for the debt and interest, and subjecting the negro Cupid to sale towards satisfaction of the mortgage.

Collier, in this Court assigns for error, the dismissal of the bill as to the defendants M'Kinley and Birney in the Court below, and insists that a decree should have been rendered against them.

CAMPBELL, KELLY, and HUTCHISON, argued for the complainant, and cited authorities to shew that a purchase with notice of a prior unregistered deed, could not prevail against it. [a]

*a* Powell on Mortgages Ed. of 1822, notes 552. 3 Atk. 301. 635. Sugden on Vendors 511 to 533. 2 Ves. jr. 437. 2 Sch. & Lefr. 315. 2 Marshall 149. 2 Munf. 196. 6 Mass. 30. 9 John. 168. 10 John. 460. 3 Wheat. 449. 4 Wheat. 487. 5 Cranch 154, 167. Wheat. Dig. 178, 142.

HOPKINS, for the respondents.

By JUDGE CRENSHAW.    This case as presented to the Court, involves important points, none of which it is deemed necessary now to settle, except to determine whether Collier's mortgage is sufficiently established by those rules which govern in a Court of equity, so as to bring it fairly before the Court.    The bill alleges that Collier's mortgage has been so defaced and obliterated by accident, that it could not be exhibited.    Chapman, in his answer, says he did execute the mortgage to Collier, he thinks for four negroes, being a part of those in M'Kinley's possession, the names of which he does not recollect. Birney answers, that he was a witness, or was at least present, when the mortgage was made by Chapman to Collier.    If the answers of Chapman and Birney could be admitted as evidence against M'Kinley, then the existence of the mortgage alleged in the bill, is established.

The general rule is, that the answer of a defendant cannot be read in evidence against his co-defendant.    To this rule, it seems there are some exceptions.    The inquiry therefore is, whether the case under consideration, comes within any of the exceptions.

*b* 9 Cranch 153.

In the case of *Clark's Exr's. v. Van Riemsdyke,* [b] Judge Marshall lays down the proposition, that the answers of three copartners and joint-owners of a ship, though insolvent and discharged under the insolvent laws of a State, cannot be read in evidence, to charge the other

---

* NOTE.—What the proofs were, the record does not disclose.

joint-owner on a bill drawn by authority of the owners. In that case three of the defendants, who had taken the benefit of the insolvent laws, and who were copartners in merchandise, and joint-owners of the vessel with the other defendant, admitted in their answers that the supercargo of the vessel had authority to draw the bill in question. The Court excluded the answers as inadmissible to prove that the supercargo, as a partner, had authority to draw the bill. The Court also excluded their depositions, on the ground of their being interested witnesses, notwithstanding their discharge under the insolvent law. In the case of *Starling v. Blair*, [a] Wilkinson being indebted to M'Ilvain, for the purpose of securing payment, gave a mortgage on certain lots in the town of Frankfort. The money not being paid at the time agreed on, M'Ilvain filed his bill against Wilkinson, and obtained a decree of foreclosure and order for sale, under which Starling purchased one of the lots. Blair then filed his bill against Wilkinson, M'Ilvain and Starling, alleging that prior to M'Ilvain's mortgage, he had purchased the lot of Wilkinson. The bill was taken *pro confesso* as to Wilkinson. The other defendants in their answer, did not admit, but required proof of Blair's purchase. The question then was, whether Wilkinson's admissions, implied in the order *pro confesso*, could be received as evidence to prove his previous sale to Blair. Chief Justice Boyle, in giving the opinion of the Court, says, "that if Wilkinson had answered and expressly admitted the contract, or sale to Blair, it could have no effect against the other defendants; 1st, because the answer of one defendant cannot be received as evidence asgainst another; and 2nd, because the confession of a vendor, after he has parted with his title, is not admissible in derogation of the title in the hands of the vendee."

If then this be sound law, the case of Chapman forms no exception to the general rule, and his answer cannot be read for the purpose of establishing Collier's mortgage; because this would be in derogation of his deed of trust and subsequent sale to M'Kinley.

It next becomes important to inquire whether Birney's answer, can be read in evidence against M'Kinley.

If he had no interest in the subject of litigation, or in the event of the suit, it was not necessary to make him a party, and his deposition might have been taken and used at the hearing of the cause, as that of an indifferent witness. [b]

In 1st M'Cord's Chancery Reports, it is said, that after the trust has been executed, and the property delivered to those who under the deed are authorised to receive it, or in other words to the *cestui que trust,* the trustee need not be made a party.   If this be good law, it may have some application to the present case: for the bill shews that the trust has been executed, and that M'Kinley has possession of the negroes as a purchaser, and in payment of his debt.

In 2nd Johnson's Chancery Reports, it is laid down, that if a party be made defendant *pro forma,* but has no interest in the cause, and in the 6th of the same author, that a party charged as combining with others in a fraud against which relief is sought, may be a witness for his co-defendant, and seems to deny the position that he can be a witness against him.   In the case before us, the bill expressly charges "that the said conveyance, meaning the deed of trust, was contrived by said defendants to defraud the complainant, and to secure Birney, who was security for the payment of M'Kinley's debt "   In the case of *Wilson v. Wilson,* a it was also decided, that the evidence of a trustee was inadmissible to destroy the deed of trust, to support which, was the sole purpose for which he was created.

The result of my researches and reflections, and on this subject they have been laborious, is, that Birney is so charged in the bill as to preclude his answer from being read in evidence against M'Kinley, and that without his answer, or the answer of Chapman, there is no sufficient testimony to establish the complainant's mortgage, set forth in the bill.

It appears from the record, that on the circuit, the case was heard on the bill, answers, and proofs; but what those proofs were, we are not informed by the record.   If they were available to the complainant, he might have taken the necessary steps to bring them before this Court.   A majority of the Court are for affirming the decree.

Decree affirmed.

Judge Perry, dissenting.

Judge Taylor, not sitting.