Nov. Term,
1856.

ACHEY
v.
STEPHENS

---

## ACHEY and Wife *v.* STEPHENS.

Where the act of a party is sought to be avoided on the ground of mental imbecility, the proof of the fact lies upon him who alleges it, and until the contrary appear, sanity must be presumed.

After proof of general derangement, however, the burden of proof is changed to the other party, who must show that the party who did the act, was sane at the time it was performed.

In chancery, an averment in the answer responsive to the bill, that the party was sane at the time the act was performed, is evidence of that fact, against which proof of general derangement will not avail.

APPEAL from the *Hancock* Circuit Court.

DAVISON, J.—Bill in equity, filed by *Stephens*, the appellee, in *July*, 1849. Its object was to set aside a conveyance of a tract of land in *Hancock* county, made by *Stephens* to *Mary Achey*. The bill alleges substantially that *Henry Achey*, in the month of *February*, 1849, kept an inn at *Cincinnati, Ohio*, and *Stephens*, being there as a guest, fell sick, and so remained for several weeks; that during his sickness he became insane, and while in that

*Thursday,
January* 8,
1857.

condition, *Henry* and *Mary Achey*, by fraud, &c., induced him, without any consideration whatever, to execute the deed in question. It is alleged that the conveyance was made on the 17th of *February*, 1849.

*Achey* and wife filed their joint and separate answer under oath, wherein they admit the execution of the deed, and that no consideration passed when it was made; but aver that *Stephens* proposed, of his own accord, and without solicitation from any one, to convey the land to *Mary Achey*, in consideration of her extraordinary care and attention to him while he was sick; that the deed was duly witnessed and acknowledged in *Cincinnati*, and recorded in said county. Further, they deny that said deed was obtained by undue or improper means, or that it was made or delivered when *Stephens* was in an imperfect state of mind; but, on the contrary, aver that he was, at the time of its execution and delivery, in sound mind and memory. Upon final hearing, the Circuit Court adjudged the conveyance void, and decreed accordingly.

This being a suit in chancery, decided anterior to the present code, all the evidence is upon the record in the form of depositions; and the point of inquiry is, does that evidence sustain the decree? *Matthew Little*, a witness, deposes that he was at *Cincinnati* in *February*, 1849, called to see *Stephens* at *Achey's* inn, and found him sick—very low.—"It was," says the deponent, "my opinion that *Stephens* had been on a big spree, and had the *delirium tremens*—the symptoms indicating such to be the fact. On being introduced, and my name being announced to him, he could not recognize me for a long time, and frequently asked me, holding me by the hand, '*Matthew*, is it you?' His sight seemed much affected. He seemed to see me, but appeared to be unable to identify me for sometime. On finally ascertaining it to be me, he seemed overwhelmed with gratitude, or some other emotion. He was unable to keep up a connected conversation with me, but talked at random. I think *Achey* told me he had been sick about two weeks. It

is my opinion that *Stephens* was of unsound mind, and not fit to transact any business. From his reduced condition it would take several days to recover his ordinary mind. From the best of my recollection this was sometime between the 15th and 25th of *February*, 1849; but I think it was about the 20th.

*Thomas B. Dunnahue*, another witness, says that, in the years 1848 and 1849, he resided in *Cincinnati*, and was frequently at *Achey's* hotel. *Stephens* was there as a drover and guest, in *February*, 1849, as near as witness can recollect, and remained with *Achey* some three, four, or five weeks; that during a portion of that time he was confined to his bed by sickness. While confined, witness did not see him; but before and after he was able to be about the hotel, deponent saw him ever day or so. *Stephens* was very much debilitated and en- feebled, and was evidently laboring under mental derangement. Frequently during his stay at the hotel, he offered to give witness his horse if he would procure him some spirits to drink. He seemed to place no value whatever on his property. He was unfit and incapable of taking care of himself, and should not have been permitted to remain by himself. Such was the state of his mind during the time he was at the hotel, that had he been related to witness, he, witness, would not have permitted him to remain without a protector, lest he would destroy himself. He was restless, nervous, and much debilitated. One *Deitz*, an hostler, obtained a conveyance from *Stephens* for a tract of land in *Hancock* county, *Indiana*. *Deitz* told witness that the consideration was his supplying him with liquor from the bar of the hotel, and for waiting on him at his room. *Deitz* valued the land at 300 dollars, and witness offered him 200 dollars, which he refused. The time witness speaks of, was the only time he knew *Stephens* to be at the hotel, and if he had stayed there at any time during the year 1849 for more than a week, witness would have known it, as he visited that hotel every day or so. This is, substantially, all the evidence.

It is alleged in the bill, and not denied by the answer, that the conveyance was executed on the 17th of *February*, 1849. Now, the inquiry at once arises, had *Stephens*, at the time of its execution, understanding sufficient to comprehend the nature, extent, and consequences of the transaction?

In all cases where the act of a party is sought to be avoided on the ground of mental imbecility, the proof of the fact lies upon him who alleges it, and until the contrary appears, sanity is to be presumed.

This rule, however, has its qualifications, one of which is, that after general derangement has been shown, it is then incumbent on the other side to show that the party who did the act was sane at the time it was performed. But this qualification does not apply in the present case. Mere proof of general derangement, would be insufficient to sustain the decree; because the defendants have shown that *Stephens* was sane at the time the act was performed. In their answer they explicitly aver that he was at the time he executed and delivered the deed, of sound mind and memory. And this averment being directly responsive to the bill, was evidence in the case, and must be taken as true, unless disproved by two witnesses, or one witness and corroborating circumstances. 2 Blackf. 324.—9 Cranch, 160.—R. S. 1843, p. 839. Hence, it was incumbent on *Stephens* to show by evidence sufficient to disprove the answer, that he was of unsound mind when the deed was executed. What, then, say the witnesses? Neither of them assume to know anything of the deed. Their testimony, it is true, relates to his mental condition within a space of time during which the transaction may have occurred; but in relation to dates, they speak with no degree of certainty. *Little* says that, according to the best of his recollection, he visited *Stephens* sometime between the 15th and 25th of *February*, 1849, but thinks it was about the 20th; when in his opinion he, *Stephens*, had been on a big spree, had the *delirium tremens*, and was of unsound mind, and not fit to transact business. Still,

he visited him but once, and we perceive no ground for the conclusion that that visit occurred on the day of the conveyance. But suppose the visit did occur on that day, then his deposition stands unsupported by *Dunnahue's* testimony; because he says expressly that he did not see *Stephens* while confined with sickness. Moreover, it is evident that the imperfect state of mind to which the witnesses refer, was merely temporary and not of the permenant kind which the law might presume to continue. *Hix* v. *Whittemore*, 4 Met. 545.

The evidence adduced on the trial does not, in our opinion, disprove the responsive averments in the answer; and as the deed appears to be founded upon a consideration which the law deems sufficient, the decree must be held erroneous.

*Per Curiam.*—The decree is reversed with costs, and the Circuit Court is ordered to dismiss the bill.

*D. M'Donald* and *W. A. McKenzie*, for the appellants.