BENT and others, appellants, and SMITH and others, respondents.

1. On proof that a declaration of trust of real estate had been signed according to the statute of frauds, but was lost, the trust will be established.

2. The answer denied the fact of the trust and the written declaration as alleged in the bill. *Held,* that two witnesses are not necessary to overcome the positive and direct response of the defendant under oath in his answer, but that it may be overcome and a decree made, either upon the strength of two witnesses, or one alone with corroborative circumstances giving a turn to the balance, or a preponderance of proof in favor of the complainant, and thereby producing conviction to the mind.

3. Relief will not be denied by reason of laches in filing the bill to establish the trust, if the delay is satisfactorily explained.

The opinion of the Chancellor is reported in 5 *C. E. Green* 199.

*Mr. Gilchrist,* Attorney-General (with whom was *Mr. Browning*), for appellants.

I. The existence of the declaration of trust is sufficiently proved, though only one witness testifies to being present at its execution.

The rule that the direct responsive answer of a defendant as to a fact within his own knowledge, must prevail unless overcome by more evidence than the oath of one witness, was misapplied by the court below. Its application is always

difficult. 1 *Hoff. Ch.* 188. The rule has many exceptions. *Robinson* v. *Hardin*, 26 *Georgia* 344.

"More evidence" in the sense of the rule does not mean another witness; one witness with corroborating circumstances is enough to overcome the answer.

"The reason of the rule is that there being a single deposition only against the oath of the defendant in his answer, the denial of facts by the answer is equally strong with the affirmation of them by the deposition. Where, therefore, there are *any* corroborating circumstances in favor of the plaintiff's case, which give a preponderance in his favor, the court depart from the rule." 2 *Daniell's Ch. Pr.* (3d *Am. ed.*) 843, and many cases there cited; 1 *Greenl. on Ev.*, § 260; *Gresley's Eq. Ev. introduction, p.* 4, *note f, and p.* 156; 1 *Phil. Ev.* (Cowen & Hill's ed.) 154, 155, and notes; *Sturtevant* v. *Waterbury*, 1 *Edw. Ch.* 444; 9 *Cranch* 160; 5 *Peters* 111.

The answer that *denies* may contain the circumstances to corroborate the plaintiff's proof, so as to overcome itself when taken in connection with the proof. *Pierson* v. *Catlin*, 3 *Vt.* 272; *Maury* v. *Lewis*, 10 *Yerger* 115; 2 *Daniell's Ch. Pr.* 843.

It has been laid down in numerous cases, that circumstances alone in the absence of a positive witness, may be sufficient to overcome the denial even of a person who answers on his own knowledge. *Long* v. *White*, 5 *J. J. Marsh.* 238; 1 *Hoff. Ch.* 189, 190; 9 *Cranch* 153, 156, 160; *Robinson* v. *Hardin*, 26 *Georgia* 344; *Gould* v. *Williamson*, 21 *Maine* 276.

Slight circumstances are enough to support a single witness against a denial in the answer. *Gresley's Eq. Ev.*, *p.* 4, *note f*, and cases cited, and *p.* 156; *Sturtevant* v. *Waterbury*, 1 *Edw. Ch.* 443, 444.

In the case in hand, the answer itself affords a corroboration of the witness. Though the defendant denies the execution of the declaration of trust, yet he admits that one of Bent's *objects* in making the assignment of the agreement to

the defendant, was that Mrs. Bent might have a place to live in. Though he denies the charge of spoliation by himself, he does not deny it by his wife.

The answer abounds in negative pregnants, and is evasive.

The possession of the lease and agreement, and of assignment by the deceased, is admitted certainly for six months, and proved by Mrs. Bent afterwards in November, 1854, up to April, 1851. Payment of rent by Mrs. Bent to Westervelt, and admission of the trust to Mrs. Bent by the defendant, and many other circumstances.

II. There are no such laches in this case as will deprive the *cestui que trust* of the right to set up the trust.

The delay is accounted for by the poverty of the children; the nonage and absence of Richard; the influence of Smith with the family; the supposed loss of all evidence to establish the trust, and the discovery of the evidence shortly before bringing the suit.

The cases on the subject do not justify the disposition of this case against the complainants on the ground of laches, nor does the Chancellor allude to it. It is, however, suggested in the answer, but laches must always be accompanied with some change of position by the defendant.

He must be injured by enforcing the trust after laches. See *Knight* v. *Bowyer*, 2 *DeG. & J.* 421, 443; *Sturgis* v. *Morse*, 3 *DeG. & J.* 1; *Obert* v. *Obert*, 1 *Beas.* 429; *Marsh's Ex'rs* v. *Oliver's Ex'rs*, 1 *McCarter* 262.

*Mr. I. W. Scudder*, for respondents.

1. The main ground of equity in the complainants' bill, as a question of fact, has not been sustained by the proofs, but the proofs are conclusively to the contrary.

The equity of the complainants' bill is, that when John Calvin Smith took the deed of assignment of the agreement and lease, made between Westervelt and Bent, he took the same in trust. The charge in the bill is, that this declaration of trust was in Smith's possession, or in his wife's possession, or destroyed.

The answer is full and unequivocal that no such declaration of trust was ever made.

The oath of a single witness will not prevail against a distinct and positive assertion in the answer. *Gresley's Eq. Ev.* 156.

The agreement and lease, and assignment, show clearly that no declaration of trust was ever executed.

2. The pretence set up by the complainant that Smith, or his wife, or some one in his behalf, between the time of the death of Bent and the time of the funeral, went to Bent's rooms, in Jersey street, New York, and took away all Bent's books of account, and also the declaration of trust, is wholly disproved.

3. The fact that this pretended declaration of trust was never seen by any member of Mr. Bent's family, is strongly against its existence.

4. All the surrounding circumstances show an abandonment of all equitable claim on the property, if any existed.

5. The declaration of trust, as set out in the bill, is expressly confined to an assignment of the lease, and does not relate to the right to purchase the fee simple of the land.

The declaration of trust must be in writing, under the statute to prevent frauds and perjuries. *Nix. Dig., p.* 358, *sec.* 11; *Hill on Trustees, marg. p.* 57; *Drake* v. *Newton,* 3 *Zab.* 111; *Baldwin* v. *Campbell,* 4 *Halst. Ch.* 891.

The trust cannot be enlarged beyond the terms set forth in the written declaration; if it could, it would result in doing away with the statute of frauds.

6. Loose conversations or general declarations cannot create a trust or constitute evidence of a trust. *Steere* v. *Steere,* 5 *Johns. Ch.* 1; *Nix. Dig.* 358, *sec.* 11.

7. If the assignment was made to hinder, delay, or defraud creditors, it was good as against Bent and his heirs.

*Lokerson* v. *Stillwell,* 2 *Beas.* 357; *Den* v. *Monjoy,* 2 *Halst.* 174; *Jackson* v. *Garnsey,* 16 *Johns.* 192; *Roberts on Fraud. Con.* 646; *Jackson* v. *Dutton,* 3 *Harrington* 98.

8. Lapse of time is a bar in a case like this.

Thirteen years, four months, and fourteen days elapsed between the date of the assignment and the exhibition of the bill. The pretended declaration of trust was not under seal. The statute of limitations had run against the agreement to deliver up or assign the assignment, if any such agreement existed. *Hill on Trustees, marg. p.* 168; *Pickering* v. *Lord Stamford,* 2 *Ves., jun.,* 583.

The trust was properly denied by the answer. *Story's Eq. Pl.,* § 762.

The opinion of the court was delivered by

BEDLE, J.

The bill seeks to establish a trust against the defendant, Smith, in favor of the complainants, who are the heirs-at-law of Richard Bent, deceased, in a certain house and lot at Tillietudlum, Bergen county; also, to compel a conveyance of the property and an account of the profits.

On the 23d day of February, A. D. 1848, Peter Westervelt, jun., agreed in writing with Richard Bent to sell to him the house and lot in question for $4000, the deed therefor to be delivered at any time within seven years, upon payment of $1000 in cash, and securing the balance, to be paid in annual instalments, by bond and mortgage, with interest at six per cent., payable semi-annually; and that, in the meantime, Bent should pay $116.50 every six months, in advance, as rent, for the term of seven years, or until the deed should be delivered. This agreement was assigned by Bent to Smith, together with Bent's estate in the premises, by a writing, under his hand and seal, dated August 18th, 1849; and Bent, by a tenant's agreement of the same date, agreed to hire the property of Smith for one year from August 20th, 1849, at the yearly rent of $240, payable half-yearly. The agreement of Westervelt, the assignment, and tenant's agreement, are exhibits in the cause, produced by Smith; and Smith says that, contemporaneous with the tenant's agreement, he gave to Bent a landlord's agreement. This, however, is not an exhibit, as the same cannot be found.

Bent entered into possession under the Westervelt contract, and continued to possess the property, before and after the assignment to Smith, up to the time he (Bent) died, January 30th, 1851; after which Smith, some time in the spring of 1851, took the possession, and on the 1st day of April, 1852, received from Westervelt a conveyance on the terms mentioned in the agreement. Since then Smith has possessed the premises.

The bill was filed December 20th, 1862. At the date of the assignment, Bent was about seventy-eight years of age, and his wife about fifty-eight. Their children are the three complainants, one of whom, the son, when the assignment was made was a minor, and the other two, the daughters, were then married. Bent's wife was a widow previous to her marriage with Bent, having two children, one of whom is the wife of Smith. The property was occupied by Bent and his wife, during the summer season, for boarders; and a good deal of the time, in the winter, the wife would stay with her daughters, Mrs. Smith and Mrs. Reid, in the city of New York. The bill sets out that Richard Bent, being of great age, desired to provide in case of his death for the care and charge of this property, and for the carrying out of the purchase for the benefit of his wife and children; and having confidence in Smith, he made the assignment to him in trust for himself (Bent), and in case of his death in trust for his widow and children, to wit, Jane Bent, the widow, and the complainants, Richard M. Bent, Jane Reid, and Ellen Brown; and that, to manifest the said trust, Smith, on the 18th day of August, 1849 (the same date of the assignment), made and signed a declaration of trust to the effect stated. The bill distinctly alleges that the assignment was in fact made in trust, and that it was manifested in writing, signed by Smith. The answer denies the fact of the trust and the written declaration. The case is clearly within the statute of frauds, unless the evidence shows a declaration in writing signed by Smith. This is the material question in the cause, and is one of fact. The evidence is undoubtedly

to be regarded as close, yet the conclusion is entirely satisfactory that such written declaration of trust was signed by Smith contemporaneous with the making of the assignment. The rule as to the amount of proof necessary to overcome the positive and direct response of an answer and warrant a decree, is this : If the case rests merely on the testimony of a single witness, against the express answer of the defendant to the allegations of the bill, where the answer is "positively, clearly and precisely" responsive, no decree will be made but to dismiss the bill; or, as expressed by Chancellor Green in *Brown* v. *Bulkley*, 1 *McCarter* 299, "Where there is merely oath against oath, that of the defendant in his answer must prevail."

But the answer may be overcome by either two witnesses, or one alone with corroborative circumstances giving a turn to the balance, or a preponderance of proof in favor of the complainant. *Gresley's Eq. Ev.* 4, and cases in note; 1 *Greenl. Ev.*, § 260; 2 *Story's Eq.*, § 1528; 2 *Daniell's Ch· Pr.* 985, 983, *n.* 1; *Clark's Ex'rs* v. *Van Riemsdyk*, 9 *Cranch* 160; *Cooth* v. *Jackson*, 6 *Ves.* 12; *Evans* v. *Bicknell*, *Ibid.* 183; *East India Co.* v. *Donald*, 9 *Ves.* 281.

The same rule was substantially laid down by Chancellor Pennington in *Chance* v. *Teeple*, 3 *Green's Ch.* 174, in this language : "The Master has probably felt himself bound by the principle that two witnesses are necessary to overcome the answer of the defendant. This is not universally true; one witness and corroborating circumstances are sufficient."

The early rule of the English Court of Chancery was that two witnesses were necessary as the foundation of a decree against the answer; but that rule has been modified, and may now be considered established as already stated. The reason of the change is found in the text books. The expression sometimes seen that one witness and circumstances equivalent to another are necessary, is not sufficiently accurate. It is too indefinite to be used as a general test. There must be, as stated by the Chancellor in the case before us, "more evidence than the oath of one witness;" but the

amount is not measured. That must depend upon the facts and circumstances of each case. It is sufficient if the evidence is enough to preponderate or turn the balance against the oath of the defendant, regarding it as the oath of any other witness, and not merely that of an interested defendant; and in searching for the truth involved, just so much or so little additional to the counter-balancing oath is required as will produce conviction to the mind. Subject to this explanation, the rule is also substantially laid down in *Brown* v. *Bulkley*, *supra*. The weight of the answer may also be judged of by its intrinsic worth, like the testimony of any witness, although it may be that by reason of the relation of the defendant to the complainant, he having been called upon to answer, his answer cannot be impeached by general evidence of character.

In applying the rule, it is not necessary that the corroboration should be by additional *express* proof on the particular fact in question. If that were required, it would be equivalent to another witness. The preponderance may be effected by a contradiction of other material parts of the answer, or by facts stated in the answer, or by any other evidence legally bearing on the subject matter of the cause, tending to give probability to the statement of the one witness rather than to that of the defendant, and thereby producing conviction of its truth.

The position of the defendant in his answer is briefly this: that at the time of the assignment, one and a half years after the contract, Bent could not pay the rent, and wanted to abandon the property; that it was not worth, then, $4000, but about $3500; that he took the assignment absolute and unqualified for the consideration of $5, then paid by him to Bent; that he had no knowledge and did not believe that Bent desired to provide, in case of his death, for the care of the premises and for carrying out the purchase for the benefit of his wife and children; that the assignment was not taken in trust in point of fact, and that there was no written declaration of it. The complainants, on the question of the

written declaration, produced what purported to be a copy, as follows :

" I, John Calvin Smith, hereby stipulate and agree to deliver up or re-assign to Richard Bent, or to his heirs or assigns, the assignment this day made to me by Richard Bent, in trust for the benefit of his family, whenever the same shall be demanded of me by the said Richard Bent, or heirs or assigns, or any one for him.

" This agreement, it is understood, relates to the assignment of the lease of property in Tillietudlum, New Jersey, from Peter Westervelt, jun., to Richard Bent. Dated this 18th day of August, 1849.

(Signed)                    " JOHN CALVIN SMITH."
" Witness : C. S. BRONSON."

They also produced a witness, Bronson, a lawyer from New York, who swore that this paper was found by him in some old pigeon holes in his office, that he had not over-hauled for years, among some papers of Bent; that it was a copy of an original in his own handwriting, which original was drawn in his office and there signed by Smith, and was witnessed by him, (Bronson). Bronson gave a distinct and circumstantial account of how the original came to be drawn and signed. The copy was written on a paper which was, evidently, the original draft of the Westervelt agreement, with alterations and interlineations in it. These were in Bronson's handwriting, but the draft was not. That, the witness said was handed to him, he thinks by Bent, and he (Bronson) corrected it. The copy of the declaration was in Bronson's handwriting. The loss of or inability to find the original, if it existed, was sufficiently proved to admit the secondary evidence. This witness then distinctly contradicts the answer, but if the case rested merely there no decree could be made in favor of the bill; hence the importance of corroborative circumstances. Bronson, although it was attempted to shake his testimony by Southard, another lawyer from New York who occupied an office adjoining Bronson, in the same building, and who drew the assign-

ment, is not contradicted in anything material. Upon a careful comparison of the evidence of each, I am satisfied that it is not irreconcilable, and that Bronson is not weakened by Southard. The production of the draft of the Westervelt agreement interlined by Bronson, and the circumstantial nature of his testimony, tend very much to strengthen it; and if it is true, the contention of the bill is established. We then must look to the rest of the case—its facts and circumstances—to see on which side the preponderance of the evidence is under the rules as given, and in doing so the substance of the whole answer must not be lost sight of, as well as the mere denial of the writing declaring any trust.

Without going into detail, the case, apart from Bronson's evidence, satisfactorily shows that soon after the contract with Westervelt was made, Bent built an addition to the house of four rooms, and made improvements at an expense of from $700 to $1000, and that the fair value of the property was then about $5000; and it is hardly probable that with a contract of seven years to run before he was obliged to take a deed, that Bent would give the contract and the benefit of his improvements to Smith, for the mere sum of $5, to the deprivation of his own children. The answer of Smith, that the lease and privilege of purchase on August 18th, 1849, were of no value, and that the property was worth only about $3000, is disproved by the facts. The case, apart from Bronson, also satisfactorily shows that there was, in fact, an agreement between Bent and Smith, that Smith should take the assignment for the benefit of Bent's family, and hold it for their benefit. This conclusion is based on the admission of Smith, sworn to in the cause, and also on a variety of circumstances leading to the same result. And in this respect the answer is also disproved, for it denies the fact of any trust apart from the writing. The rent which Bent agreed to pay by the tenant's agreement, after the assignment, was $240, half-yearly; that was just six per cent. interest on $4000, the contract price. Mrs. Bent testified that she paid the rent to Westervelt up to April 1st, 1851, as Bent died

January 30th, 1851, and that the amount was $116 and some cents. That is the amount of the half-yearly rent in the Westervelt agreement. Smith says, in his answer, that he paid the rent to Westervelt. This Mrs. Bent denies. Whatever the fact may be about that, I am satisfied that Bent fully paid the rent, either to Westervelt or Smith, and that there was no occasion to assign the contract, one and a half years after its date, by reason of. Bent's inability to pay the rent. With the answer disproved in the essentials stated; and one witness positively swearing to a declaration of trust in writing signed by Smith, in opposition to the denial in the answer, and that witness' evidence incidentally corroborated by the papers produced by him; and it being very probable that such declaration was made, from what is shown to be the nature of the transaction between Bent and Smith; the conclusion follows, to my mind, that there was a declaration signed by Smith, like the copy produced. The tenant's agreement to pay rent is not inconsistent with the trust, as the effect of that was to insure the interest of the $4000 to Smith by way of rent, he by the assignment being obliged to pay the rent; and the effect of the landlord's agreement was to secure the legal possession to Bent.

The trust then being legally proved, the next question is, whether the complainants will be denied relief on the ground of laches. The deed was procured by Smith, April 1st, 1852, and the bill was filed December 20th, 1862, nearly eleven years afterwards. Immediately after the death of Bent, his widow had disputes with Smith about the property, he claiming an absolute right to it, and she insisting to the contrary. The son, Richard was young, being only in his twenty-first year when his father died; and both of the daughters were then married. The disputes between the widow and Smith continued up to the time the deed was obtained; and having learned that he had obtained it, she then thought the case was hopeless. The papers of the deceased could not be found; they, in some way, having disappeared immediately after his death, but without the fault of the

widow or the complainants. Not having any written evidence of the trust, the complainants had every reason to think that they had no chance for relief; and they did not discover the copy and obtain knowledge of the making and signing of the original declaration, until a short time before the filing of the bill. The delay is satisfactorily explained, and cannot prejudice the complainants.

It was suggested by defendants' counsel that the trust could only apply to that particular part of the agreement in relation to the leasing. The clause in the declaration of trust, "This agreement, it is understood, relates to the assignment of the lease of the property at Tillietudlum, New Jersey, from Peter Westervelt, jun., to Richard Bent," was not intended to limit the operation of the preceding clause, but only to designate the instrument to which it applied, and in calling it a lease, that word must be taken to refer to the whole paper, and not to a part.

The paper sufficiently shows and defines a trust in favor of Richard Bent, his heirs and assigns, in the whole assignment, to meet the requirements of the statute of frauds, and equity will trace it to the deed obtained by Smith under the contract.

In this trust estate, the widow was entitled to an estate in dower. She did not join in the bill for the reason, I suppose, that Smith had paid her seven hundred dollars, either to satisfy her for any interest she might have, or to quiet her importunity.

The decree of the Chancellor must be reversed, and a decree be made in favor of the complainants, declaring that Smith holds the premises in question, and the deed therefor, in trust for the use and benefit of the complainants, in equal undivided parts, their heirs and assigns, and establishing such trust accordingly, subject to any estate in dower of Bent's widow if still living. Also, that Smith convey the premises in fee simple to the complainants, their heirs and assigns, subject to any such estate in dower if said widow is living; and that said conveyance be made, on compliance by

the complainants with such terms, and upon such an accounting and adjustment of the equities between the parties, as the principles of equity may require, under the direction and decree of the Court of Chancery; and reserving all further equity for the determination of that court.

The complainants are entitled to recover their costs in both courts.

Decree reversed by the following vote :

For reversal—BEASLEY, C. J., BEDLE, CLEMENT, DEPUE, KENNEDY, LATHROP, OLDEN, SCUDDER, VAN SYCKEL, WALES, WOODHULL.  11.

For affirmance—OGDEN.