No. 66.—The Ruckersville Bank and others, plaintiffs in error, *vs.* James Hemphill and others, defendants.

[1.] When a cause in Chancery is submitted on the bill and answer alone to the Jury, and the answer plainly, fully and positively denies all the facts and circumstances charged in the bill, upon which the complainant's equity is founded, no decree can be rendered in favor of the complainant.

[2.] The mere existence of cross-demands, will not be sufficient to justify a set-off in Equity. A debtor to a bank for borrowed money, cannot set off against his note, or a judgment rendered thereon, the dividend that will be coming to him as a stockholder in the company when its affairs are wound up. A set-off is ordinarily allowed in Equity, only when the party seeking the benefit of it, can show some equitable ground for being protected against his adversary's demand.

[3.] It is otherwise if there be an express agreement to set-off the debts against each other, *pro tanto.* In such a case, a Court of Equity would enforce a specific performance of the stipulation, although at the Common Law the party might be remediless.

[4.] It is the duty of the Court to apply the law to the facts of the case as ascertained by the evidence; and it is error in the Court to submit the whole case to the Jury, with direction to find as *they* might think right and proper between the parties, regardless alike of the law and the facts.

[5.] It is irregular and improper for the Judge to converse with a Juror respecting the case, after the Jury had been charged with the cause, and manifestly wrong to send to the Jury a *material* paper, *not in evidence,* without the consent, and against the protest of the party against whom it is to operate.

In Equity, in Floyd Superior Court, July adjourned Term, 1849. Tried before Judge Wright.

The Ruckersville Bank recovered a judgment against James Hemphill, for a large sum of money. Hemphill filed a bill, enjoining the collection of the *fi. fa.* alleging that he was one of the stockholders of the bank, and had paid in the sum of $1400 ; that when suit was brought on his note for money borrowed of the bank, he defended the same, and was induced to withdraw his defence on an agreement, that the bank would stay all proceedings until the 1st April, 1844, at which time they would come to a full and fair settlement with him on account of the $1400 paid in, and all his interest as a stockholder. The bill charged, that the bank had ceased to do business as a bank, but refused to settle with the stockholders, still retaining its officers salaried, by which the funds of the bank were being consumed. The bill charged, that on a fair settlement there would be a surplus to divide among the stockholders ; that the bank had failed and refused to comply with their agreement with the complainant. The bill prayed a specific performance of the agreement.

The answer denied every equitable allegation made in the bill. A motion was made to dissolve the injunction on this ground, which being granted, the case was appealed to the Supreme Court, who, at the September Term, 1847, sustained and affirmed the decision, and held " that the answer of the defendants plainly and distinctly and quite satisfactorily met and denied all the facts and circumstances upon which the complainants' equity was based." See 3 *Kelly's Rep.* 445.

On the trial at the July adjourned Term, 1849, the complainants read the bill and answer to the Jury and closed their case; whereupon, counsel for defendants moved to dismiss the bill, on the ground that all the equity was denied by the answer. The Court overruled the motion, and defendants excepted.

The counsel for defendants requested the Court to charge—

1st. That the answer of the defendants having denied the contract set up in the bill, and no evidence being introduced to disprove it, the defendants are entitled to recover.

2d. That the answer of defendants having " denied all the facts and circumstances upon which the complainants' equity is based," they must find for the defendants, unless the answer is disproved by two witnesses, or one witness and corroborating circumstances.

To each of which the Court remarked, " if the premises be true, this is a correct principle of law;" and upon this error is alleged.

The Court farther charged the Jury, " I am at a loss how to charge you in this cause. I feel disposed to compel this bank to account with Hemphill, for it has manifested a disposition throughout this case not to do it, and to place the matter in such a condition that the Court and Jury cannot do it; and yet it is insisted that the Supreme Court has determined that all the equity in the bill has been denied by the answer. You can retire and do as you may think is right and proper between the parties."

All of which charge has been assigned to be erroneous.

The Jury retired, and in a short time requested the Court to send them the *fi. fa.* against Hemphill, which had not been in evidence. Defendants objected. In a short time, one of the Jury came into Court, and after conversing with the Judge for a few minutes, the Court stated to defendants' counsel, " he thought he had better let the Jury have the *fi. fa.*" The counsel still objected, when the Court told the Sheriff to " take the *fi. fa.* and carry it to the Jury, and if the defendants were dissatisfied with it, they could carry the case to the Supreme Court." All of which proceedings are assigned as error.

A more elaborate history of the case is incorporated into the decision of the Court.

W. AKIN, for plaintiffs in error.

W. H. UNDERWOOD, for defendants.

*By the Court.*—LUMPKIN, J. delivering the opinion.

A bill was filed in the Superior Court of Floyd County, by James Hemphill, Madison Montgomery, Moses G. Bradbury, Wesley Shropshire and Charles Hemphill, stating that the complainant, James Hemphill, became a stockholder in the Ruckersville Bank, to the amount of $1400, and executed a mortgage of his land in the County of Floyd, to secure the balance, under the provisions of the Act of 26th December, 1838, entitled " an Act to authorize the business of banking, and to regulate the same." Afterwards, the said James Hemphill, and the other complainants, and his securities and indorsers, executed their note, which was discounted by said bank, for the sum of $5800, which was permitted to run in said bank for sometime as an accommodation paper.    The complainants were afterwards sued upon this note, and judgment rendered against them, from which they entered an appeal—*the* complainant, James Hemphill, believing that he had good and legal, as well as equitable defence, against the said action, consisting of set-off for the said sum of $1400, advanced and paid to the said bank, and also for the amount of dividends upon the capital stock held by him, to the amount aforesaid of $1400, which he had held for a considerable time, during which the said bank had been in operation and made profits, as he believed.

Afterwards, while the appeal was pending, the Ruckersville Bank, by its officers, and the complainant, James Hemphill, made a verbal agreement, by which it was stipulated, that in considera tion that he would surcease his said defence to the action, and would, at the then ensuing term of Floyd Superior Court, confess judgment in said case, or dismiss the appeal, the said bank would wait and stay all farther proceedings in the said case until the 1st of April, 1844, when the said bank would enter into a full and fair settlement with him, and receive in full settlement and satisfaction of the judgment, the sum which might be justly and equitably due, after allowing him the said sum of $1400, and the profits or dividends to which he might be entitled as such stockholder, and give up said mortgage, and release, or cause to be released, his said bonds from all incumbrance, and receive back the

said stock of the bank. The complainant alleged, that he had no means of proving this agreement except by the defendants' answers to said bill. The bill farther charged, that relying upon said agreement, and not doubting the fidelity of said bank to comply therewith, and carry into full effect the terms thereof, according to the true intent and effect thereof, thereby releasing him from all connexion with, interest in, or liabilities to, the said bank, he caused the said appeal to be dismissed, and the first judgment was confirmed.

The bill farther charged, that in pursuance of said agreement, the complainant, James Hemphill, in fulfilment of his part thereof, a few days previous to the expiration of the time specified therein, called upon the Deputy Sheriff, in whose hands the execution issued upon said judgment was, and paid him thereon the, sum of six thousand dollars, being the amount it was supposed would be due said bank on a full and fair settlement, and which was paid over to the bank, and shortly afterwards he called upon said bank and demanded final settlement, according to said agreement, offering to pay any balance which might, on such settlement, be found due by him, which the said bank neglected and refused to do.

The bill farther charged, that the said bank had ceased to do, perform or transact any business as a bank, by which the complainant, or other stockholders similarly situated with himself, could be at all benefited; 'on the contrary, the complainant charged, that he had been informed, and believed it to be true, that there had not been the assemblage of any number of competent directors and officers of the said institution sufficient to the lawful discharge of the business of the said bank, for a long space of time, and he well doubted whether there would be again; that he had been informed, and believed, that it was the intention of the said bank to collect all it might have it in its power to do, and cease to transact any other banking business.

The bill farther charged, that said bank kept and retained under pay, a number of salaried officers, clerks and others, who had little or no duties to perform, and who, in fact, performed none in which the said complainant, *as a stockholder*, could have the slightest interest, so long as the said bank was or should be managed as it then was and had been for a long time ; the pay and emoluments of which said officers were daily consuming the

money paid into said bank by the complainant and others, with the profits which had been made by the operations of said bank previously, to a portion of which profits he, as such stockholder, was justly entitled, and which, according to said agreement, he ought long before to have received.

The bill farther charged, that said bank received the said $6000, and ordered the balance, purporting to be due on the execution, to be collected out of the said complainants, in violation of all and every part of said agreement, when the said $6000 was more than sufficient to pay all the demands of said bank against the complainant, upon a fair settlement and allowance of the just sets-off to which he was entitled, and upon which he had intended to rely in his defence to said action, on the appeal.

The bill further charged, that if the said bank should be permitted to collect the said balance, the sums to which the complainant was entitled would be totally lost, or he would have to resort to suits and vexatious litigation, against persons to him unknown, and that his lands would remain encumbered with the said mortgage, for a time, which he had no means of ascertaining or preventing; and which might, and probably would be, still further encumbered by the fraudulent practices of said bank.

The bill further charged, that the said complainant had applied to said bank, and to said Joseph Rucker, the President thereof, to come to a fair settlement with the complainant, and to comply specifically with the said agreement, and to cause the said execution to be returned satisfied.

The bill concluded with a prayer, that the said Bank might, by order and decree, be compelled specifically to perform the aforesaid agreement, and for an injunction which might be made perpetual, and for other and further relief. The bill was sworn to by Moses G. Bradbury, one of the complainants.

The bill was answered by Joseph Rucker, President, William B. White, Cashier, and Peter Alexander, Bedford Harper, and Joseph Blackwell, Directors of the Ruckersville bank, and was sworn to by them. There was no answer by the Ruckersville bank, under any corporate seal.

The answer filed, positively denied the agreement alleged in the complainants' bill, and also, the alleged defence of the complainant, James Hemphill.

On the 9th day of January, 1847, a rule was granted at Cham-

bers, calling upon the complainants to show cause, at the court house in Cassville, on the 23d day of that month, why the injunction should not be dissolved, upon the following grounds:

1st. Because there is not sufficient equity in said bill, to entitle the complainants to any discovery from, or decree against the defendants, in a Court of Equity.

2d. Because the answer of the defendants has been filed, swearing off all the equity, (if there be any,) in the bill. The complainants, by their counsel, appeared in obedience to this rule, and excepted to the answer. The exceptions were sustained, and the rule dismissed. Afterwards, on the 10th of June, 1847, a regular term of the Court below having intervened, and no answer to the exceptions having been filed, a second rule was granted at Chambers, calling upon the complainants to show cause, on the 10th day of July thereafter, at the court house in Cassville, why the said injunction should not be dissolved, on the following grounds, to-wit:

1st. Because the answer of the defendants has been filed, swearing off all the equity in the bill.

2d. Because there is no sufficient equity in the bill, to authorize a Court of Equity to make any decree against the defendants.

The complainants, by their counsel, appeared in conformity with the requirements of said rule, and on the argument, objected, and the Judge below determined that the Ruckersville Bank, the defendant, had not filed any answer. The complainants then objected that they could not be called on to show further cause, as the Court did not possess the power to call them to trial at Chambers, to resist the dissolution of an injunction, or to make any order for such dissolution, until the answer of the defendants had been filed; the complainants also objected, on the ground that a rule had been once before granted, calling complainants to show cause against the dissolution of the same injunction, which had been argued; and upon argument, the Court had refused to dissolve the said injunction; and that this was a second rule which the Court had no right to grant, when the regular term of the Court had intervened and been holden between the granting of the first and second rule, to show cause at Chambers. And also, the complainants insisted that the bill made a case entitling them to relief; and further, that they would move at the next Superior Court of Floyd County, to amend the bill so as to charge, that

the Ruckersville Bank had settled all the business of the bank, except what is in litigation in this suit, and that this last fact had come to complainants' knowledge since the last term of Floyd Court. And upon all these grounds, the complainants insisted against and objected to dissolving the said injunction. All which were overruled by the Judge below, and the following order passed:

" This case came before me on this day, on the motion of the defendants, on the two grounds stated therein, when the solicitor for the complainants objected to the injunction being dissolved—

" 1st. Because the case had been before the Court heretofore, and the Court refused to dissolve the injunction, on the ground that the bill had not been fully answered, and ordered the defendants to answer over, various exceptions having been filed to the answer; and,

" 2dly. Because the Ruckersville Bank had filed no answer, the answer filed not being under the seal of the corporation, but was sworn to by certain persons styling themselves the President, Cashier and Directors.

" The Court overruled the first objection, but determined that a corporation could only file its answer to a bill in Equity, under its corporate seal; and that an answer sworn to by the President, Cashier and Directors, he would treat as no answer of the corporation; but the answer in this case he would consider as the answer of Joseph Rucker only, who is a party to said bill. But the Court further determined and ordered, that the injunction be dissolved, upon the ground that there is no sufficient equity in the bill to authorize a Court of Equity to make any decree against the defendants; and 2ndly, that the bill has never been sworn to properly, as it appears on the face of the bill that James Hemphill is the only complainant who could know anything about the material charges in the bill, and Moses G. Bradbury is the only complainant who has sworn to it."

To the overruling of which said objections, the dissolving of the injunction and the making of said order, complainants excepted.

The writ of error was argued at the Gainesville Term, 1847, of this Court. The complainants insisted that the motion could not be entertained, for the reason that there had been a similar motion made once before, and refused by the Court. The record

discloses the fact, that the first motion to dissolve was refused, because the answer was not sufficient, and the exceptions taken thereto were sustained by the Court; and we are of the opinion that this objection was properly overruled by the Court below; nor can we see any good reason why the complainants should object that the motion to dissolve was not made at the regular term of the Court, as the injunction continued to operate in their favor, until the motion to dissolve was afterwards made at Chambers, pursuant to the 4th Equity rule of practice.

The complainants further objected to the dissolution of the injunction below, as appears from the decision of the Court contained in the record, "Because the Ruckersville Bank had filed no answer; the answer filed not being under the *seal* of the corporation, but was sworn to by certain persons styling themselves the President, the Cashier and the Directors. The Court determined that a corporation could only file its answer to a bill in Equity, under its corporate seal; and that an answer sworn to by the President, Cashier and Directors, would be treated as no answer of the corporation, but that the answer in this case would be considered as the answer of Joseph Rucker only, who is a party to said bill. But the Court further determined and ordered, that the injunction be dissolved, upon the ground that there is no sufficient equity in the bill, to authorize a Court of Equity to make any decree against the defendants; and that the bill has never been sworn to properly, as it appears on the face of the bill that James Hemphill is the only complainant who could know anything about the material charges in the bill, and Moses G. Bradbury is the only complainant who has sworn to it."

The decision of the Court was, that the judgment of the Court below be affirmed, dissolving the injunction; not because there was no equity in the bill which authorized a decree in favor of the complainants, but on the ground that the answer of the defendants had plainly and distinctly denied all the facts and circumstances charged in the bill, upon which complainant's equity was based. 3 *Kelly*, 435.

At October Term, 1847, of the Superior Court of Floyd County, the cause was submitted to a special Jury, who found for the defendants the sum of $309,37, with costs, from which verdict an appeal was entered in terms of the law, by the Ruckersville Bank.

On the 25th day of April, 1848, Madison Montgomery, one of the complainants in the bill, made oath in open Court, that he was advised, and believed that it was necessary, that an important amendment should be made to the bill, and that he came to the knowledge of the facts constituting said amendment, since the original bill was filed, and too late to have made the amendment before the last term of the Court; whereupon, leave was granted to file the amendment, and the same, when made, was ordered to be served upon the defendants, or their attorney, in four months. The complainants charge in the amendment, that they were informed, and believe, and state it to be true, that the said Ruckersville Bank had settled and wound up all the business of said bank, except the unwarrantable and unjust claim which they were urging against the complainants; that they had for a long time ceased and failed to make any return to the Comptroller General of the State; by reason whereof, their charter had ceased and become forfeited; and that there was no proper and equitable ground or reason why the bank should be allowed to collect any sum, whatever, from the complainants, on account of any outstanding liabilities or claims against the said bank, nor did any cause exist why they should not be decreed to come to a full and fair account with the said James Hemphill, one of the complainants, and make to him all fair allowances for all the money he had paid. They further charged, that there was not any matter or thing, now existing, which should prevent such just and equitable settlement, which they are now and always have been ready and willing to make. They further charged, that the defendants had sent notice to the debtors in Floyd County, that they would settle with all who resided there, and allow them, as a discount, all monies that had been paid by them into the bank, and that they had in fact so settled with all their debtors, except the complainant, James Hemphill. To this amendment, the defendants, on the 21st of February, 1849, made the following answer, to wit:

" They say that it is not true, as stated in said amendment to said bill, that the Ruckersville Bank has settled and wound up all the business of said bank, except the claim against said complainants, for the bank has now an outstanding circulation of its bills to the amount of four hundred and fifty dollars; two hundred and twenty dollars of which are now waiting to be redeemed,

but cannot be redeemed by the bank, for the want of funds ; and the bank is owing to depositors, and on other contracts, over two thousand dollars ; besides, there is a considerable amount owing to the bank, by various individuals, which is unsettled; and what part of the same will be collected by the bank, these defendants cannot say. And these defendants further answering, say that they admit that regular returns have not been made to the Comptroller General of this State, as the law requires, for sometime past, and the reason it has not been done, was, because the bank had no funds to operate on—had nothing to report, except what the bank owed, and what was due the bank, the principal portion of which was in an uncertain condition ; and the expense of making semi-annual reports was considered too heavy for the bank to bear, under all the circumstances, as it would decrease, considerably, the small amount that will be due the stockholders of said bank, when it shall be able to make a settlement of all its transactions. But these defendants deny that the charter of said bank is forfeited, and they insist that it can only be done by a judgment of a Court of competent jurisdiction, on a proceeding instituted against the bank for that purpose ; and they insist that said complainants have no right to inquire into the forfeiture of the charter of said bank, in this collateral way ; for it cannot lessen, in any degree, their obligation to pay the amount they owe the bank. And they deny that there is no proper grounds or reasons why said bank should be allowed to collect any sum from said complainants, for they have already stated, in this their answer to said amendments, the outstanding liabilities of said bank, and they deny that no cause exists now, why said bank should not come to a settlement and an account with said James Hemphill, one of said complainants, and make to him allowance for all the money he has paid into said bank, on his stock, (and all other money paid by him has been allowed ;) for they have stated in this their answer to said amendment, that there is a considerable amount due and owing the bank, by various individuals, and that they did not know and could not say, what part would be collected by the bank besides this. When the bank shall have collected all the debts due it, that can be collected, and paid all its liabilities, there will be but a small part of the sum paid into the bank, by the stockholders, on their stock, to be distributed among them ; but how much it will be, these defendants cannot say, under

the existing condition of the affairs of the bank ; and the reason why the stockholders have made nothing, and lost nearly all their stock, has been owing to the heavy losses of the bank in various ways.   It lost a large amount by an arrangement made with the Bank of Brunswick, for the redemption of the bills of the Ruckersville Bank, in order to prevent the sale of the property of the stockholders, which was mortgaged to redeem its bills, and to save the credit of the bank, and thereby a heavy loss to the billholders, which would have ensued if the bank had failed to redeem its bills; and during the constant run which was made upon the bank for specie, the directors used every exertion to make collections, and save the heavy losses the bank was constantly sustaining, but was unable to do so ; and if those who owed the bank—James Hemphill and others—had paid up their liabilities to the bank as they ought to have done, it would have saved large sums of money which the stockholders would have received, but which are now lost forever in this way, and in attorney's fees, insolvent debtors, and in various other ways, the bank has lost large sums of money.   Even the expenses in trying to collect the money which said complainants justly owe the bank, in attorney's fees, and sending agents and attorneys to Rome, to attend to the claim, has amounted to over one thousand dollars, and the debt is yet unpaid ; and for these reasons, these defendants insist that said James Hemphill cannot be allowed the money which he paid into said bank on his stock; and these defendants deny that there is no matter or thing existing to prevent a settlement with said complainants, and they refer to the reason herein set forth ; and they deny that said complainants have ever been ready and willing to make a fair settlement with said bank.   For these defendants state, that the cashier of said bank, William B. White, went to the City of Rome, in the month of July last, with the books of the bank, in order to make a settlement with said complainants, if possible, and to avoid any other or farther trouble and expense in trying to collect said debt, and this after being informed that said complainants were willing to make a fair settlement; but after incurring the trouble and expense of going to Rome, and exhibiting the books of the bank, showing all the profits and losses of the bank, to the son of said James Hemphill, (who professed to have authority to settle said claim,) and to the attorney of said complainants, and making an estimate, as well as

could be made, showing the amount that would probably be due to said James Hemphill, on his stock, (for it was impossible to make a correct estimate under the circumstances,) and offering to allow the same as a credit on the debt, said complainants were, and still are owing said bank. Said complainants, by their agent and attorney aforesaid, refused to settle; and such was the anxiety of said cashier to settle upon, and bring to a close this troublesome and expensive law suit, that he then and there, in order to effect a settlement, offered to the said son of said James Hemphill, a large sum of money, more than was justly due him, or can ever be due him, on any fair settlement; and this liberal proposition was also refused. (And this proposition was made, which appeared to be doing injustice to the other stockholders, because it was thought better to give the sum to said James Hemphill, than to spend it in litigation.) And it was insisted, and no other settlement would they offer to make, that said James Hemphill should be allowed, as a credit on the *fi. fa.* the bank holds against him and the other complainants, the full amount of the stock he paid into said bank, with the legal interest thereon from the time it was paid in; when the books showed them, and truly too, that all the rest of the stockholders will receive but a small part of stock paid into said bank by them. This unjust proposition was refused, and these defendants have no right, and never will *willingly* do such injustice to the rest of the stockholders of said bank. These defendants deny having any recollection that they ever sent any such message to the debtors of said bank in Floyd County, or any thing of the kind, as charged in said amended bill. And they deny that said bank has ever settled with any stockholder, and allowed him to withdraw his stock, except one, and that was before heavy losses of the bank, which have been referred to, were sustained. Nothing of this sort has taken place since. And these defendants, further answering, state that they are anxious to bring to a close and settle up all the affairs of said bank; and as soon as this is done, said James Hemphill will be allowed and paid him all that is justly due him on the stock he owns in said bank."

The appeal cause was, on the 12th day of July, 1849, submitted to a Special Jury on the bill and answer—no testimony being offered on either side. The defendants' counsel then moved to dismiss the bill, because the equity of the bill being fully deni-

ed in the answer, no decree could be made in favor of the complainants, which motion was overruled by the Court.

After the argument had closed, counsel for the defendants asked the Court to charge the Jury—

1st. That the answer of the defendants having denied the contract set up in the bill, and no evidence having been offered to disprove the answer, the defendants are entitled to recover, and the Jury must so find.

2d. That if the answer of the defendants denies the contract set forth in the bill, it is conclusive, and the Jury must find for the defendants, unless the answer is contradicted by two witnesses, or one witness and corroborating circumstances.

3d. That the answer of the defendants having "denied all the facts and circumstances upon which the complainants' equity is based," the Jury must find for the defendants, unless the answer is disproved by two witnesses, or one witness and corroborating circumstances.

Which charges the Court refused to give, but remarked to the Jury, to each of said charges, " If the premises be true, this is a correct principle of law."

The defendants' counsel also asked the Court to charge the Jury, " that Hemphill was not entitled, under the evidence in the case, to be allowed the amount of the stock paid into said bank." Which charge the Court refused to give, but remarked to the Jury, " This would be determining a question by the Court which the Jury must determine."

The Court farther charged the Jury, " I am at a loss how to charge you in this cause.   I feel disposed to compel this bank to account with Hemphill, for it has manifested a disposition throughout this case not to do it, and to place the matter in such a condition that the Court and Jury cannot do it; and yet it is insisted that the Supreme Court has determined that all the equity in this bill has been denied by the answer.   You can retire and do as you may think is right and proper between the parties."

The Jury then retired, and in a short time sent to the Court for the *fi. fa.* which was enjoined by the bill.   The counsel for the defendants objected to the *fi. fia.* being sent to the Jury, and the Court sent the Jury word that they could not have it.   In a short time thereafter, one of the Jury came into Court, and after conversing with the Court for a few minutes, the Court stated to the

counsel for the defendants, that he thought that they had better let the Jury have the *fi. fa.;* but the counsel for the defendants still objected to its going to the Jury, and the Court then told the Sheriff to "take the *fi. fa.* and carry it to the Jury, and if the defendants were dissatisfied with it, they could take the case to the Supreme Court." The *fi. fa.* was then carried to the Jury, who afterwards returned into the Court the following decree: " We, the Jury, decree that defendants do allow complainants fourteen hundred dollars, with interest from the time it was paid into bank to this date, in settlement—it being the amount of complainant's stock in said Ruckersville Bank."

The counsel for the defendants having given the complainants' counsel notice, by the service required by law, then applied to the Court to set aside the verdict, and grant a new trial on the following grounds, to wit:

1st. Because there was no evidence to authorize said verdict.

2d. Because the verdict of the Jury was contrary to the evidence.

3d. Because the verdict of the Jury was against law.

4th. Because after the Jury had retired to their room, the Court permitted the *fi. fa.* which was enjoined, to be carried to the Jury, to aid them in making a decree—said *fi. fa.* not having been read in evidence to the Jury, and the counsel for the defendants objecting to it at the time.

Which motion was overruled by the Court, and the defendant excepted to the judgment and opinion of said Court, in overruling the motion of the defendants to dismiss said bill; in refusing to give the charges as requested by the defendants; also, excepted to the charge of said Court as given to the Jury; to the decision of said Court in allowing said *fi. fa.* to be carried to the Jury; to said Court conversing with said Juror about said case, after the cause had been submitted to the Jury and they had retired from the Court-room; to the decision of said Court in refusing to set aside the verdict and grant a new trial, as applied for by said defendants.

[1.] The first point to be considered is, whether, when a cause is submitted upon the bill and answer alone, without any corroborating proof to sustain the charges in the bill, or to contradict the statements in the answer, and the answer plainly and distinctly denies all the facts and circumstances charged in the bill upon

which the complainant's equity is based, there can be a decree rendered for the complainant?

Mr. *Daniel* states, that in that event the Court will dismiss the bill for want of sufficient matter, confessed by the answer, to make a decree. 2 *Dan. Ch. Pr.* 1189. *Gresley*, in his Treatise on the Law of Evidence in Courts of Equity, (p. 4,) thus states the rule : "In cases where a material fact was directly put in issue by the answer, the Courts of Equity followed the maxim of the Civil Law, *responsio unius non omnino audiatur*, and required the evidence of two witnesses as the foundation for a decree ; but of late years the rule has been referred more closely to the equitable principle on which it is grounded, namely : the equal right to credit which a defendant may claim when his oath, positively, clearly and precisely given, and consequently subjecting him to the penalties of perjury, as opposed to the oath of a single witness. When this is the case, some corroboration is required—the testimony of a second witness, or any circumstances which may give a turn to the balance."

Professor *Greenleaf*, after citing this authority with approbation, adds : "For the plaintiff, by calling on the defendant to answer an allegation which he makes, thereby admits the answer to be evidence. In such case, if the defendant, in express terms, negatives the allegations in the bill, and the bill is supported by the evidence of only a single witness, affirming what has been so denied, the Court will neither make a decree, nor send the case to be tried at law, but will simply dismiss the bill." 1 *Greenlf. Ev.* 298.

And Judge *Story*, in his Commentary upon Equity Jurisprudence, says, "But in Courts of Equity, the parties plaintiffs as well as defendants, may reciprocally require and use the testimony of each other upon a bill and cross-bill for the purpose; and in every case the answer of the defendant to a bill filed against him, upon any matter stated in the bill, and responsive to it, is evidence in his own favor. Nay, the doctrine of Equity goes farther ; for not only is such an answer proof in favor of the defendant, as to matters of fact of which the bill seeks a disclosure from him ; but it is conclusive in his favor, unless it is overcome by the satisfactory testimony of two opposing witnesses, or of one witness, corroborated by other circumstances and facts, which give to it a greater weight than the answer, or which are equiva-

lent in weight to a second witness; or, to express the doctrine in another form, it is an invariable rule in Equity, that where the defendant, in express terms, negatives the allegations in the bill, and the evidence is only of one person, affirming as a witness what has been so negatived, the Court will neither make a decree, nor send the case to be tried at Law, but will simply dismiss the bill." 2 *Story's Eq. Jur.* §1528.

Not only all the elementary works, but all the reported cases, both in England and in this country, uniformly maintain the same doctrine, to wit: not only that there can be no decree, where the case is submitted on the bill and answer—all the allegations in the bill being fully negatived by the answer—but that the bill will be dismissed, unless the answer is controverted by two witnesses, or one witness and circumstances. *Pember and his wife vs. Math-us*, 1 *Bro. Ch. Cas.* 44. *Cook vs. Clayworth*, *and Savage vs. Brocksopp*, 18 *Ves.* 12, 335. *Clarke vs. Vannensdyke*, 9 *Cranch*, 160. *Lenox vs. Prout*, 3 *Wheat.* 520. *Beatty vs. Smith*, 2 *Hen. & Munf.* 395. *Moffatt vs. McDowall*, 1 *McCord's Ch.* 434, 440. *Smith vs. Bush*, 1 *Johns. Ch. R.* 459. *Sullivan vs. Baby*, 1 *Litt.* 42. *Roberts vs. Salisbury*, 3 *Gill & John.* 425. *Hawkins vs. Emley*, 3 *Monroe*, 325. *McGowan vs. Young*, 3 *Stew. & Port.* 161. *Alexander vs. Wallace*, 10 *Yerg.* 115. *Gaither vs. Caldwell*, 1 *Dev. & Bat. Eq.* 509. *Daniel vs. Mitchell*, 1 *Stor. C. C. R.* 172. *Neville vs. Demerritt*, 1 *Green. Ch. R.* 322.

Indeed, the presiding Judge seems, himself, to have recognized this proposition; for when called on to instruct the Jury, that the answer of the defendants having denied all the facts and circumstances upon which the complainants' equity was based, the Jury must find for the defendants, unless the answer was disproved by two witnesses, or one witness and corroborating circumstances, he replied, "If the premises be true, *this is a correct principle of law.*"

Why, then, was the bill sent to the Jury for trial, and a decree rendered in favor of the complainants, not only without evidence, but contrary to the sworn answers of each and every one of the defendants? and a new trial refused, when applied for, upon the grounds that the verdict was contrary to evidence and against law?

The presiding Judge had, himself, decided that there was no equity in the *original* bill, upon which a decree could be render-

ed for the complainants.    3 *Kelly*, 440.    And this Court had held, that whatever of equity there might be in the original bill, was fully sworn off by the answer.    What fact, then, was *assumed* in the charge as asked for, which was not true?    It could only be, of course, that the allegations in the *amended* bill had not been negatived.

I have already referred to both of these documents, and it will puzzle the most lynx-eyed legal acumen, to point to a charge in the *amended* bill, that is not positively, plainly and precisely denied in the *amended* answer.    If it were not so, it was the duty of the Court to have specified wherein the answer was not *responsive* to the bill, but contained matter in defence or evidence merely.    In the latter case, it is admitted that the defendant's answer is no proof whatsoever of the facts stated in it, but they must be established by independent testimony.

The verdict of the Jury was, therefore, clearly contrary to evidence and against law, and the motion for a new trial ought, unhesitatingly, to have been granted.

[2.] The next point to be considered is, was the complainant, Hemphill, entitled to be allowed as a set-off to the debt which he owed the bank for borrowed money, the amount of assessment which he had paid upon his stock?

Equity generally follows the Law as to the doctrine of set-off, and if there is a connection between the demands, Equity acts upon it and allows a set-off under particular circumstances.    The mere existence of cross-demands, will not be sufficient to justify a set-off in Equity.    *Rawson vs. Samuel*, 1 *Craig & Phillips*, 161, 178, 179.    *Whyte vs. O'Brien*, 1 *Stu. & Shi.* 551.    Indeed, a set-off is ordinarily allowed in Equity, *only* when the party seeking the benefit of it, can show some *equitable* ground for being protected against his adversary's demand, and the mere existence of *cross-demands* is not sufficient.    A *fortiori*, a Court of Equity will not interpose on the ground of an equitable set-off, to prevent the party from recovering a sum awarded to him for damages for a breach of contract, merely because there is an unsettled account between him and the other party, in respect to dealings arising out of the same contract.    2 *Stor. Eq. Jur.* §1436.

In the case of *Rawson vs. Samuel*, Lord *Cottenham* said, " We speak familiarly of equitable set-off as distinguished from the set-off at law ; but it will be found that this equitable set-off exists

in cases where the party seeking the benefit of it, can show some equitable ground for being protected against his adversary's demand.    The mere existence of cross-demands is not enough.    Is there any equity," the Chancellor asks, " in preventing a party who has recovered damages at law, from receiving them, because he may be found to be indebted upon the balance of an unsettled account, to the party against whom the damages have been recovered ?    Suppose the balance should be found to be due to the plaintiff at law, what compensation could be made to him for the injury he must have sustained by the delay?    The Jury assess the damages, as the compensation due at the time of their verdict. Their verdict can be no compensation for the additional injury which the delay in payment may occasion.    What equity, then, have the present plaintiffs to be protected against the damages awarded against them ?"

And it may well be asked, what equity has Hemphill to be protected against the judgment recovered against him for money loaned ?    Why should he thus get the start of the other stockholders, in being allowed his *pro rata* distribution of the surplus assets?    Is the fact that he has received accommodation *heretofore*, any reason why he should be preferred *now?*    He does not allege the *insolvency* of the officers into whose hands the money, when collected, will come, nor any other particular reason, for preventing the payment.    What, then, is his equity ?    We are, after carefully considering all the circumstances of this case, wholly unable to discover it.    On the contrary, on every consideration of right and justice, he is bound to pay up the debt which he owes, so as to enable the defendants to close up the concern.

[3.] If the express agreement set up in the bill, to come to a settlement, and set-off the mutual indebtedness, had been established, or had it been admitted by the answer, or proven *aliunde*, that the affairs of the company were wound up, and that notice had been given to the stockholders, or a portion of them, to come forward and receive their dividend, a Court of Equity would interfere, although at Common Law the party would be remediless. *Jeffs vs Wood,* 2 *P. Wms.* 128, 129.    *Whitaker vs. Rush, Ambler,* 408.   *Hawkins vs. Freeman,* 2 *Eq. Ca. Abr.* 10, *pl.* 10.    But here the special contract, notice to stockholders, &c. are not only denied most positively in the answer, but the letter purporting to have been written by the bank to its attorneys, instructing them

how to act under the alleged stipulation or arrangement between the parties, and which was transmitted by Hemphill himself, goes .far to prove that such could not, at least, have been the understanding of the bank.

Would a debtor to an estate, upon a contract made with the testator or intestate, or with the representative, for property bought at the sale, be allowed to go into Equity, and without alleging any special circumstance, as for instance the insolvency of the executor or administrator, be entitled to have the debt which he owed, set-off by his legacy or distributive share of the estate? We think it plain that this could not be done. The administration could not be thus arrested. Besides, it would enable any and every debtor who was a legatee or distributee, when called on for payment, to have the whole administration overhauled or examined over again.

Just so in the present case. If this stockholder is entitled to this investigation, every other stockholder who happens to be a debtor, (and stockholders are not unfrequently debtors to their own corporations,) would be entitled to the same privilege, and thus, instead of preventing litigation, one of the grounds occupied why this proceeding should be sanctioned, it would be *multiplied* almost indefinitely.

But, apart from all this, when a decree is to be made, settling the interest of *any one* stockholder, in the surplus on hand to be divided, ought not *all* the stockholders to be made parties? Are they not directly interested in the decree to be rendered? As well might a bill be brought by one partner against another, praying for a dissolution and settlement of the concern, when several of the members of the partnership were left out of the proceeding. All are indispensable parties, since the decree would affect all. Any other course would be productive of interminable litigation; and what contradictory results would follow, although the facts in each case might be identically the same? To one stockholder one Jury might award one-half, to another, another Jury would decree perhaps one-third, and to another one-fourth only of the capital paid in, notwithstanding each was entitled to the same rate of distribution. It seems to me unnecessary to press this argument farther. Both reason and authority are manifestly against the complainant's right to the relief which he seeks.

Complaint is made against the charge of the Court, as already

copied in the narrative which I have given of this case. Passing by the extra-judicial condemnation of the conduct and motives of the defendants, there is one thing a little remarkable in this matter. The presiding Judge charges the bank with manifesting a disposition *throughout* this case, of not being willing to account with Hemphill; overlooking, it would seem, the fact that after the collection of the bank debt against Hemphill had been suspended for upwards of two years, to-wit : from March, 1845, to July, 1847, by an injunction obtained by Hemphill, that *he, himself,* decided, that taking *all* the allegations in the complainant's bill to be true, and conceding that *all* the reasons assigned by Hemphill why the money due upon his note should not be paid, were well founded, that still " *there was no sufficient equity in the bill to make any decree against the defendants.*" 3 *Kelly,* 440. With what propriety, then, could the Court charge the Jury, that " *He* was disposed to compel the bank to account with Hemphill, for *it* had manifested a disposition *throughout* this case not to do it, and to place the matter in such a condition that the Court and Jury could not do it." If the Court could see *no equity* in the *bill* itself, what was there in the *answer,* which denied every material statement in the bill, to justify this rebuke ?

It is true that we affirmed the interlocutory order of the Circuit Judge, dissolving the injunction. It was upon the ground, however, that the answer of the defendants plainly and distinctly denied all the facts and circumstances charged in the bill upon which the complainant's equity was based, and not because there was not sufficient equity in the bill itself. 3 *Kelly,* 445, 446.

We have had time and opportunity to review the matter maturely, and our opinion with respect to it has never wavered or been different from that which we originally entertained; and that is, that taking all the charges in the complainant's bill, including the verbal agreement alleged to have been entered into between the bank and Hemphill, in August, 1843, *to be true,* that a strong case for the exercise of the equitable jurisdiction of the Court was clearly made out; but we held then, as we hold now, since the amendment of the pleadings, that the answer has most positively and fully negatived every fact charged in the bill upon which the complainants' equity rested; that this being the case, the injunction originally granted, was properly dissolved at

the time, and that upon the bill and answer *alone*, as amended, no decree can be rendered for the complainants.

We trust that we have now made ourselves sufficiently intelligible, and that at the re-hearing, the presiding Judge will not be *again " at a loss to know how to charge"* the Jury ; and we regret that any obscurity on our part, should have prevented the former decision which was made in this case, from being *"respected and carried into full effect by the Court below,"* as all the judgments of this Court are required to be by the Act which organized it. *Act of* 1845, §5.

[4.] Upon what principle the charge to the Jury, that whether the Supreme Court had passed upon the matter or not, (for such is its substance,) that *they* "could retire and do as *they* might think right and proper," can be sustained, I am at a loss to understand.   Is it true that the Jury, under the Constitution and laws of force in this State, have the unlimited control over cases, and may render *any* verdict *they* may think right and proper, regardless alike of the law and the testimony ?   The wildest *reformer*, I apprehend, would scarcely go to this extent.

It was manifestly erroneous in the Court, in its instructions to the Jury, to confer upon them such latitude of discretion—to transfer to them, without limitation, and at random, the power of judicature, which the law devolves upon the Bench.

"It is wisely ordered," says Judge *Blackstone*, "that the principles and axioms of law, which are general propositions, flowing from abstracted reason, and not accommodated to times or to men, should be deposited *in the breasts of the Judges*, to be occasionally applied to such facts as come properly ascertained before them ; for here partiality can have little scope—the law is well known, and is the same for all ranks and degrees—it follows as a regular conclusion from the premises of fact pre-established."   3 *Black. Com.* 380.

Instead, therefore, of referring the *whole matter* to the Jury, to be determined according to some rule which fancy or caprice might suggest, it was the duty of the presiding Judge to have presented *the law* of the case distinctly to them—one from the responsibility of which he could not shrink—one which he owed to himself, the parties and the country.   It was just one of the cases where the Court, without being guilty of any invasion of

the rights and privileges of the Jury, should have seen to it, that the law was administered and justice done to the parties.

[5.] There are two other objections to the proceedings which transpired in the Court below, which may be considered together. I will state them in the very language of the bill of exceptions. " The Jury then retired, and in a short time sent to the Court for the *fi. fa.* which was enjoined by the bill. The counsel for the defendants objected to the *fi. fa.* being sent to the Jury, and the Court sent the Jury word that they could not have it. In a short time thereafter, one of the Jury came into Court, and *after conversing with the Court for a few minutes,* the Court stated to the counsel for the defendants, that he thought that they had better let the Jury have the *fi. fa.;* but the counsel for the defendants still objected to its going to the Jury, and the Court then told the Sheriff to take the *fi. fa.* and carry it to the Jury, and if the defendants were dissatisfied with it, they could take the case to the Supreme Court."

It will hardly be expected, I apprehend, that we should gravely discuss the questions presented in this portion of the record, i. e. the right of the Court to converse with one of the Jury respecting the case, after the Jury had been charged with the cause, and had retired to make up their verdict, and to send an important paper to their room, *which was not in evidence,* without the consent, and against the protest of the party against whom it was to operate. The views of this Court upon these points, were fully expressed in the case of *Killen vs. Sistrunk and Wife,* recently decided at Decatur. *Ante,* 283.

Without this paper, it is probable that the Jury could not have agreed upon a verdict. Had it been introduced as evidence on the trial, it would have entitled the defendants' solicitor to the conclusion of the argument; whereas, the parties having gone to trial on the bill and answer alone, the complainants' solicitor was entitled to the conclusion. *Equity Rules,* 15. *2 Kelly,* 484. Here was an important legal right, then, of which the defendant was deprived, to say nothing of his privilege to rebut this paper, had it been offered in evidence, and to comment upon it in the argument.

If a Judge may do this in a *civil* cause, why not in a *criminal ?* Let the practice here pursued be established, and what security has any suitor? And, in the language of Chief Justice *Parker,*

in *Sargent vs. Roberts and others,* (1 *Pick. R.* 337,) " it is not suf-
ficient to say, that this power is in hands highly responsible for
the proper exercise of it." Its exercise must be checked at once,
or *trial at law* is a mockery and a farce. Nor is it any sufficient
reply to make to the party thus injured, " that if dissatisfied, he
can take the case to the Supreme Court." It is but poor com-
pensation to the citizen whose rights are thus violated, to be told,
by the presiding Judge, that he may have redress elsewhere. He
may not be able to incur the expense of continuing the litigation
and making this remedy available. He is entitled to have the
law administered in every Court where his rights are in contro-
versy.

As no other redress is sought on this occasion, than the correc-
tion of the errors apparent upon the record, we have but to add,
that the judgment is reversed, and the cause remanded.